# Reeder *v.* Lehigh Valley Coal Company, Appellant.

*Negligence—Mines and mining—Trolley wire in mine—Guarding wire—Statutory duty—Act of June 2, 1891, P. L. 176—Mine foreman—Fellow servant—Master and servant.*

1. When failure to perform a statutory duty is set up as the basis of a claim for damages the burden is on the party so claiming to point to the statute which expressly imposes the duty. When the legislature takes a step in advance of the common law and imposes additional burdens upon an employer in order to meet the neccessities of modern industrial growth, the new duties thus imposed should be so clearly set forth as to leave no doubt as to the legislative intention.

2. There is nothing in the Act of June 2, 1891, P. L. 176, to include a trolley wire in the designated kinds of dangerous machinery which were required by the act to be: "protected by covering or railing so as to prevent persons from inadvertently walking against or falling upon the same;" but although this is the case, a duty yet exists upon the owner of the mine in installing an electric trolley system to provide safety appliances, such as are in general use in the business of mining, and also to keep such system inspected and properly maintained.

3. Where a mining company permits a usual passageway for its workmen to become covered with several inches of water, so that the workmen make use of a less desirable and more obstructed passageway on the other side of the tunnel, and one of the workmen in carrying a keg of powder along such passageway inadvertently brings the keg in contact with an unguarded trolley wire which the company had permitted to sag, and an explosion occurs, and another workman is injured, such workman may recover damages from the mining company for his injuries, if the workman carrying the keg was not guilty of contributory negligence.

4. Rule 43 of the mining act of 1891, contemplates the use of one passageway for men and coal cars at the same time.

5. Where a miner in carrying a keg of powder along a passageway in a mine brings it in contact with an unguarded trolley wire which had been permitted to sag, and an explosion takes place resulting in an injury to a fellow workman, the contributory negligence of the miner carrying the keg of powder, is a question for the jury where the evidence is not entirely clear that the danger from the sagging trolley wire was so open and obvious as to warrant the court in saying as a matter of law that the workman should have seen and avoided it. If the jury finds that the workman who carried the keg was not guilty of contributory negligence, the fellow servant rule cannot be invoked by the mining com-

pany to relieve it from liability for the personal injuries suffered by the other miner.

6. The electric trolley system of a mine, like all the other underground workings, should be under the supervision of the mine foreman, and if he has been negligent in permitting an unguarded trolley wire to sag, causing an injury to a miner, the owner of the mine will not be liable for the injuries sustained; but where there is evidence that the electric trolley system has been placed under the charge of an electrical engineer acting under the direction of the mine superintendent, it is for the jury to say whether the wire was in charge of the mine foreman, or of the electrical engineer acting under the authority of the superintendent, and not subject to the orders of the mine foreman.

Argued Feb. 13, 1911. Appeal, No. 279, Jan. T., 1910, by defendant, from judgment of C. P. Schuylkill Co., Nov. Term, 1906, No. 68, on verdict for plaintiff in case of Martin Reeder v. Lehigh Valley Coal Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before BROOM, J.

The facts are stated in the opinion of the Supreme Court.

The trial judge charged in part as follows:

The plaintiff also claims that the defendants were negligent and failed to carry out the law in having a live electric wire within reach or touch of passers-by unprotected, under the act, as has been read to you, requiring them to have guards at all dangerous places. It is true, the act of assembly does not specifically mention electric wires, but we call your attention to the fact that when this act of assembly was passed electric appliances were hardly in use in mines, and not being in use as means of transportation, we should say, in gathering the intent of the legislators, that their not being specifically named may be accounted for by that fact. The plaintiff's position is that they are dangerous in themselves and liable to come in contact with persons passing to and fro, and that it is such a failure to comply with the spirit, if not the letter of the law, that the defendants should be held responsible for any ac-

cident that may occur by reason of their having that wire as stated uncovered, or unprotected."

Of course, we do not mean, when we say uncovered, that it should be insulated by covering all over the wire, because then the trolley could not act; there must be contact between the wire and the trolley wheel, but some guard, such as a trough, an inverted trough made of wood, or other substance, that would make it difficult for any person to come in contact with the wire, especially with a keg of powder, or almost with anything else. We say to you that, if you believe that the defendant violated the law by not having that wire protected, under the evidence and the law as we have given it to you, then the defendant company was negligent. And, if it failed to have a proper, that is, a safe and dry passageway for its workmen to go to and from their work, and by reason of either one or both of these conditions existing, an accident occurred, that then this defendant company would be liable for any damages resulting from an accident occurring as we have stated.] [2]

[The plaintiff claims that the defendant violated the mine law in two several respects especially: first, that under the mine law the defendant was bound to furnish a safe and dry passageway for men to go to and from work. They claim that in this instance there was no passageway at all; that the railway, if there had been no cars there, would have been a safe and dry passageway, so far as the passageway itself was concerned, but, inasmuch as it was used for transporting cars loaded and empty, that that is not what is contemplated in the act of assembly; that it does not mean that the defendant had a right to combine a transportation way for coal, and so forth, with a passageway for men, as it would be impossible for men and the coal cars to go through that passageway either way at the same time.

They also claim that the gutter which was from two to three feet wide at the lower side of this tunnel was not such a passageway as is contemplated by the act of

assembly; that it was not practicable for men to go to or from their work in that drain or gutter; that there was running water there, draining from the whole colliery, naming the number, or at least a number of gangways that were drained, we think there were five. We say to you that under our construction of the law the defendant had no right to say that a drainage way met the requirements of the act which says that they shall furnish a safe and dry passageway to go to or from the work.] [3]

[We say further that if this jury finds that the defendant company was negligent in having that live wire there, and by reason of the presence of that wire and its coming in contact with a keg of powder the explosion of that keg of powder was caused, and though that keg of powder was placed there, even intentionally, or inadvertently by James Smith, and that the plaintiff had nothing to do with the touching of that, or had in no way control of it, then the plaintiff would be entitled to a verdict. And we say that whether the plaintiff provided a safe and dry passageway or not, provided the question of the passageway had nothing to do with the plaintiff. The matter of the passageway did have to do with Smith, because Smith did not use the safe and dry passageway. The explosion was occasioned by his using a passageway that was not contemplated to be used by the defendant company. But if this accident occurred, even though James Smith did not use a proper passageway, by reason of an explosion for which James Smith jointly with the defendant company was responsible, and the plaintiff, though he may have used a wrong passageway himself, and you believe that he would have been burned whether he would have been to the one or the other side of this trip, the plaintiff would be entitled to recover, as his presence and his action had nothing to do with the accident, nor anything to do with the result of the accident, if you believe the testimony as it stands here uncontradicted on that point.] [5]

Verdict and judgment for plaintiff for $6,500. Defendant appealed.

*Errors assigned* among others were (2, 3, 5) above instructions, quoting them, and (7) refusal of binding instructions for defendant.

*Daniel W. Kaercher,* with him *Samuel H. Kaercher* and *Frank W. Wheaton,* for appellant.—The unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business: Dalton v. Towanda Borough, 215 Pa. 402; Kelher v. Schwenk, 144 Pa. 348; Keenan v. Waters, 181 Pa. 247.

The trial judge was clearly in error in directing attention of the jury solely to the conditions on the east or low side of the tunnel, when the conditions on the high or west side met all the requirements of the mine law: Welch v. Carlucci Stone Co., 215 Pa. 34; Politowski v. Burnham, 214 Pa. 165; Ross v. Walker, 139 Pa. 42.

The master does not insure his employees against each other, nor is he bound to supervise and direct every detail of their labor. They must exercise their own senses: Lehigh Valley Coal Co. v. Jones, 86 Pa. 432.

Where the injury complained of is due to the negligence of a fellow workman, the master is responsible neither in law or morals: Durkin v. Kingston Coal Co., 171 Pa. 193; Ross v. Walker, 139 Pa. 42; Myers v. Edison Electric Illuminating Co., 225 Pa. 387; Kuhns v. Frick Coke Co., 216 Pa. 385; Coleman v. Keenan, 223 Pa. 29.

*A. D. Knittle,* for appellee.—It is the master's positive duty to protect his men by furnishing them with a reasonably safe place to work in: Gulla v. Lehigh Valley Coal Co., 28 Pa. Superior Ct. 11; Burns v. Vesta Coal Co., 223 Pa. 473; Weaver v. Iselin, 161 Pa. 386; Vanessee v. Coal Co., 159 Pa. 403; Silliman v. Marsden, 9 Atl. Repr. 639.

If an employer takes part of the mine from the charge of the mine foreman, and an accident happens there, the company is liable: Silliman v. Marsden, 9 Atl. Repr. 639; Burns v. Vesta Coal Co., 223 Pa. 473; Vanessee v. Coal Co., 159 Pa. 403.

If it is the duty of the company, under the act of 1891, to protect this wire so the men could not inadvertently come into contact with it, then there could be no question of assumption of risk by the plaintiff, because nothing but absolute performance of a statutory duty would relieve an employer: Gulla v. Lehigh Valley Coal Co., 28 Pa. Superior Ct. 11; Penna. R. R. Co. v. Ogier, 35 Pa. 60; Cannon v. Traction Co., 194 Pa. 159; Baker v. Northeast Borough, 151 Pa. 234; Hookey v. Oakdale Borough, 5 Pa. Superior Ct. 404.

The combined or concurrent negligence of the master and a fellow servant is no defense to the master: Kaiser v. Flaccus, 138 Pa. 332; Johnson v. Bruner, 61 Pa. 58; Burrell Twp. v. Uncapher, 117 Pa. 353; McKenna v. Gas Co., 198 Pa. 31; Kirchner v. Smith, 207 Pa. 431; Wolcutt v. Erie Coal & Coke Co., 226 Pa. 204; Dempsey v. Buck Run Coal Co., 227 Pa. 571.

OPINION BY MR JUSTICE ELKIN, May 17, 1911:

The negligence relied on to sustain a recovery in the present case is of a threefold character; first, failure to provide a safe and sufficient passageway for the men in going to and from their work; second, failure to properly guard the trolley wire which it is alleged was a statutory duty from which nothing but performance would relieve appellant; and third, that the trolley wire was insufficiently inspected and negligently maintained, and was not under supervision of the mine foreman but was in charge of an electrician employed by the superintendent. The learned trial judge instructed the jury that it was the duty of appellant to guard the trolley wire by an inverted trough, or in some other safe way, in order to protect the men from inadvertently coming in contact with it as they passed through the tunnel. This instruction was based on the theory that a statutory duty to guard the trolley wire was imposed upon appellant by article V, sec. 5, of the Act of June 2, 1891, P. L. 176. This section provides that: "All machinery used in or about the mines

and collieries, and especially in breakers, such as engines, rollers, wheels, screens, shafting and belting, shall be protected by covering or railing so as to prevent persons from inadvertently walking against or falling upon the same." Trolley wires are not included in the enumeration of the kinds of dangerous machinery and appliances to be protected by a covering or railing. The learned trial judge suggested as a reason for not including trolley wires in the enumeration of the dangerous kinds of machinery named in the act, that the use of electricity had not been introduced in the operation of mines at the time of its passage. It is doubtful whether this statement is in accordance with the facts relating to the use of electricity in mining operations. It may not have been in general use, but it was in use for some purposes in many mines, and in some mines an electric haulage system had been installed prior to the passage of the act. However, the point at issue does not depend upon the history of the introduction and use of electricity in mining operations. When failure to perform a statutory duty is set up as the basis of a claim for damages, the burden is on the party so claiming to point to the statute which expressly imposes the duty. When statutory duties are imposed we must look to the statute to ascertain what the duties are. Such duties are presumed to be different in kind and degree from those imposed by the common law, else there would be no necessity for the legislation. Statutory duties do not arise by implication but must be imposed by express legislative authority. When the legislature takes a step in advance of the common law and imposes additional burdens upon an employer in order to meet the necessities of modern industrial growth, the new duties thus imposed should be so clearly set forth as to leave no doubt as to the legislative intention. There should be no such thing as a doubtful statutory duty. The section of the act of 1891 relied on in the present case requires all dangerous machinery used in or about mines, such as engines, rollers, wheels, screens, shafting and belting to be protected by a covering or

railing. There is nothing in the language used to indicate an intention to include a trolley wire in the designated kinds of dangerous machinery. This may have been an oversight, or it may be that dangers of this character were not anticipated, but in either event the result is the same, because the act is entirely silent on the subject of guarding trolley wires. Again, it must not be overlooked that a trolley wire cannot be insulated or covered without interfering with the function it performs in transmitting the electric current. Under these circumstances it is not for the courts to say there was a statutory duty in this respect when the statute did not so provide. We, therefore, hold that there was no statutory duty requiring appellant to guard the trolley wire by placing an inverted trough over it. Notwithstanding what has been said about there being no statutory duty, it does not follow that no duty rested upon appellant in the installation and maintenance of an electric haulage system. The test of liability in the present case is not failure to perform a statutory duty, but whether appellant failed to provide an electric haulage system of the usual and ordinary character used in mining operations. The employer is not bound to provide the safest machinery or the newest and most approved appliances. He has performed his duty in this respect when he provides appliances such as are in general use in the business, trade, or industry in which he is engaged: Kehler v. Schwenk, 144 Pa. 348; Keenan v. Waters & Son, 181 Pa. 247. It is always important to keep in mind in this class of cases that the test of liability is not danger but negligence, and negligence is never imputed from the employment of methods or machinery in general use in the business: Reese v. Hershey, 163 Pa. 253. As we understand the facts of the present case, it is not contended that the electric haulage system was defective in construction, or that it was different from other systems in general use in the operation of mines, but it is asserted that it was not carefully inspected or properly maintained. There is some evidence tending to show that the trolley wire had been allowed to sag between the brackets, or per-

haps had pulled loose from its fastenings at the brackets, until it hung within a few inches of the top of the loaded cars. As a result of this sagging it is contended that the situation became dangerous to the men in lifting their kegs of powder as they attempted to cross between the cars from the west to the east side of the tunnel. It may very well be argued that if the trolley wire had been maintained in its proper position the accident would not have occurred because in that event there would have been sufficient space between the top of the loaded cars and the suspended trolley wire in which the kegs of powder could be safely carried over. In this connection it is important to keep in mind the exact situation as bearing on the duties of the employer on one side and the rights of the employees on the other. Appellant was not bound to furnish a different kind of trolley wire or to place it in a different position in the mine. If it appeared as a fact that the trolley wire had been properly installed and had remained in its original position, no negligence could be imputed to the mining company because one of its employees inadvertently or otherwise, placed the keg of powder in contact with it. The mere happening of the accident did not prove negligence. There can be no recovery in this case unless the sagging of the trolley wire was the proximate cause of the injuries which resulted from the explosion.

There is another branch of the case that must be considered in this connection. It is alleged that the mining company did not provide such a passageway for the men to pass through the tunnel as the act of 1891 requires. Rule 43 of this act provides as follows: "Every passageway used by persons in any mines and also used for the transportation of coal or other material, shall be made of sufficient width to permit persons to pass moving cars with safety, but if found impracticable to make any passageway of sufficient width, then holes of ampler dimensions, and not more than one hundred and fifty (150) feet apart, shall be made on one side of said passageway. The said passageway and safety holes shall be kept free from

obstructions and shall be well drained. . . ." The passageway on the low or east side of the tunnel answered the requirements of the act as to space and width, but it is contended that it was rendered unfit for use by the miners because it was used as a drainage channel for the mine and several inches of water constantly flowed through it. If it were not for the water running through this passageway we would be compelled to say it was ample to meet the requirements of the statute, and that the employees were bound to use it, or take their chances in entering the mine by a more dangerous way. We cannot believe, however, that the legislature intended the miners to wade through several inches of water in going to their work through a tunnel in which a safe passageway must be provided. Under these circumstances appellee and his fellow workmen were justified in making use of the less desirable and more obstructed passageway on the west side of the tunnel. Appellant could have avoided the water difficulty by paving over the drainage channel and thus have provided a safe passageway for its men as well as drainage for its mine. It did not do so and it is not therefore in position to set up as a defense in this suit that it had provided a safe passageway on the east side of the tunnel and that the men were guilty of contributory negligence in choosing a more dangerous entrance to the mine.

The passageway on the west side was ample except as obstructed for forty or fifty feet near the point where the accident occurred. As before stated, we think the men were justified under the circumstances in making use of this passageway. When they found themselves in a position where they could go no farther on account of the loaded trip of cars narrowing the space to pass through, it became necessary for them to return to a place of safety. Whether they were guilty of contributory negligence in what was subsequently done in an attempt to find a safe place was a question for the jury.

It is suggested in the argument for appellant that the trial judge in effect charged the jury that the mining

company did not have the right to combine a transportation way for coal with a passageway for men on account of the dangers that might result by using the passageway for men and coal cars at the same time. Such an instruction would be clear error. Rule 43 contemplates the use of one passageway for both purposes. It expressly provides that the passageway "shall be made of sufficient width to permit persons to pass moving cars with safety." If separate passageways were required there would be no necessity for all the safeguards to men required by this statutory rule. The requirements of the rule are based upon the use of a common passageway for the transportation of coal as well as for the men.

Again, it is argued with much force, that if there was any negligence in the case at bar, it was the negligence of the mine foreman, or of the miner who caused the explosion in attempting to carry his keg of powder over a car of coal, and as both were fellow servants of appellee, there can be no recovery of damages for the injuries sustained. If the facts upon which this position is based be conceded, it would be a correct statement of the rule of law. The accident occurred on September 16, 1905, and the right to recover depends upon the law as it stood at that time. There can be no recovery if the injuries for which damages are claimed resulted from the negligent act or acts of a fellow servant: Mansfield Coal & Coke Co. v. Mc-Enery, 91 Pa. 185; Redstone Coke Company v. Roby, 115 Pa. 364; Hall v. Simpson, 203 Pa. 146. James Smith, the miner who carried the keg of powder alleged to have caused the explosion, was a fellow servant of appellee, and, if his negligence caused the injuries, the right of action is barred. Was he so clearly guilty of contributory negligence as to require the court to so declare as a matter of law, or was this a question of fact for the jury? This is the real question on this branch of the case, and whether it was for the court or for the jury depends upon the facts proven at the trial. An employee is presumed to know and appreciate the obvious, and his duty requires him to exer-

cise his senses so as to avoid open and apparent dangers: Kuhns v. Frick Coke Co., 216 Pa. 385; Vant v. Roelfs, 217 Pa. 535; Myers v. Edison Electric Illuminating Co., 225 Pa. 387. There is no difficulty about the rule announced in these and other cases of a similar character. When the rule is applicable it must clearly appear from the evidence that the danger was so open and obvious as to require an employee in the proper exercise of his senses to see and avoid it. When it is so open and obvious it is the duty of the courts to so declare. After a careful review of the testimony in the present case we are in some doubt as to the proper application of the rule. In other words, it is not entirely clear that the danger from the sagging trolley wire was so open and obvious as to warrant the court in saying as a matter of law that James Smith should have seen and avoided it. We agree that he and all other employees were bound to know of the installation of the electric haulage system and of the location of the trolley wire over the west side of the track and above the coal cars. But this very knowledge may have misled them because if the wire had been in its proper place there might have been sufficient space to carry the keg of powder safely over. We think it would do violence to the rule for the court to hold that James Smith was bound to know that the trolley wire broke loose from its fastenings and hung several inches lower than it usually did. The situation has something to do with the question. The accident occurred in a tunnel in a coal mine. The space was narrow and limited. The tracks were occupied by a trip of coal cars at the point where the explosion occurred. The employees were apprehensive for fear the trip of cars might move before they could reach a place of safety. Under these circumstances it was for the jury to say whether due care had been exercised by the fellow employees under the circumstances. We therefore hold that as to James Smith and his fellow miners the question of contributory negligence was for the jury.

But it is argued it was the duty of the mine foreman to see that the trolley wire was maintained in good repair, and if there was any negligence in this respect it was the negligence of the mine foreman for which appellant is not liable. It has been held in a long line of cases that the mine owner is not liable for the negligent acts of a mine foreman committed in the discharge of duties imposed upon him by law and in and about those workings over which he exercises supervision. From Lehigh Valley Coal Co. v. Jones, 86 Pa. 432, and Durkin v. Kingston Coal Co., 171 Pa. 193, to Golden v. Mount Jessup Coal Co., 225 Pa. 164, this rule has remained unbroken. It may therefore be said to be settled law. It is contended for appellee that the appellant company cannot claim the protection of this rule in the present case because the electric haulage system was not under the supervision of the mine foreman and that it was installed, maintained and kept in repair by the company itself which employed through its superintendent an electrical engineer for this purpose. We see no reason why the electric haulage system like all other underground workings should not be under the supervision of the mine foreman. Rule 1, of article 12, of the act of 1891, provides that the mine owner, "shall place underground workings thereof, and all that is related to the same, under the charge and daily supervision of a competent person, who shall be called 'mine foreman.'" Rule 2 provides for the employment of a sufficient number of competent assistants when the mine foreman cannot personally attend to all of his duties. These assistants when so employed are under the control and subject to the orders of the mine foreman. Rule 13 makes it the duty of the mine foreman, or his assistants when so employed, to examine at least once every day all slopes, shafts, main roads, traveling ways, signal apparatus, pulleys and timbering and see that they are in safe and efficient working condition. Clearly, therefore, the framers of the statute had in contemplation that all of the underground workings should be in charge of the mine foreman, and the wis-

dom of so providing is not open to doubt. In dangerous work of this character it is a wise precaution to have a competent mine foreman duly certified by the commonwealth with certain statutory duties to perform as a protection to the health and safety of the men thus employed as well as to the property of the mine owner. But the owner can claim the protection of the law only so far as he complies with its provisions. If the mine owner elect to take certain parts of the machinery and appliances out of the charge of the mine foreman and exercise direct supervision through the superintendent over the same, the law will not give him the protection he would otherwise be entitled to if all of the underground workings had been committed to the care and supervision of a properly certified mine foreman. In other words, the mine owner is only relieved from responsibility for the acts of the mine foreman in connection with the underground workings committed to his care. If all of the underground workings are committed to the care of the mine foreman as the law clearly contemplates they should be, it then becomes the duty of the mine foreman to see that all of the safeguards required to protect the men are provided, and negligence in the performance of these statutory duties by the mine foreman cannot be imputed to the owner. We think it would be safer and wiser for all parties concerned if all the underground workings should be committed to the care and supervision of the mine foreman and then there would be no division of authority. When, however, this is not done, and accidents occur, courts must accept the facts as presented and apply the law accordingly. The exception to the general rule is pointed out in Wolcutt v. Erie Coal & Coke Company, 226 Pa. 204. There is testimony in the case at bar tending to show that the electric haulage system, including the trolley wire alleged to have caused the explosion, was not committed to the care of the mine foreman, but was in charge of an electrical engineer acting under the direction of the mine superintendent. If this be the fact, appellant is not in position to claim

protection on the ground that it was the duty of the mine foreman to see that the trolley wire was properly maintained. At least under these circumstances it was for the jury to say whether the trolley wire was in charge of the mine foreman, or of the electrical engineer acting under the authority of the superintendent and not subject to the orders of the mine foreman. We find it impossible to discuss every question raised, but have indicated our general views as to the issues involved as a guide to all concerned when the case is again tried.

The first, second, third, fourth and fifth assignments of error are sustained.

Judgment reversed and a venire facias de novo awarded.