## O'Brien *v.* Pennsylvania Coal Company, Appellant.

*Negligence—Master and servant—Mines and mining—Coal companies—Passageways in coal mines—Act of June 2, 1891, P. L. 176, Article XII, Rule 43—Contributory negligence—Case for jury.*

1. In an action by a track repairer against a coal company, owning and operating a colliery, to recover damages for personal injuries upon the complaint of negligence in the failure of the company to observe rule 43, Article XII, of the Mining Act of June 2, 1891, P. L. 176, providing that "every passage-way used by persons in any mines and also used for transportation of coal

or other material, shall be made of sufficient width to permit persons to pass moving cars with safety, but if found impracticable to make any pasage-way of sufficient width, then holes of ample dimensions, and not more than one hundred and fifty (150) feet apart, shall be made on one side of said passage-way," the case is for the jury where it appears that while plaintiff was at work on one of two tracks running on a rock slope in the mine, a "trip" of loaded cars came down towards him; that he attempted to escape it by rushing to the side or rib of the slope next to the track upon which he was working and stood upright there with his back against the side, but was struck and seriously injured by the cars; and where the plaintiff and one of his witnesses give testimony tending to show that there had not been a safe passageway between a moving car and the rib or side of the slope on either side of the tracks at the point of the accident.

2. A safe passage-way on one side of the slope, without regard to its width or the number of tracks upon it, is not all that the Act of 1891 requires. One such passage-way may or may not be sufficient, and whether it is or is not must depend upon circumstances.

3. In such a case, the plaintiff cannot be held guilty of contributory negligence for disregarding rule 21 of the Act of 1891, providing: "When any person is about to descend or ascend a shaft or slope, the headman or footman, as the case may be, shall inform the engineer by signal before moving or starting the engine; in the absence of a headman or footman the person or persons about to descend or ascend shall give and receive the signals in the same manner," because at the time the plaintiff was injured he was not about to descend or ascend the slope.

*Negligence—Evidence—Practice, C. P.*

4. On the trial of a negligence case where there has been no request to have the premises where the accident occurred viewed by the jury, it is improper for the defendant's counsel to ask a witness for the plaintiff on cross-examination whether he was willing to accompany any person whom the court would designate, to the premises to verify the correctness of the measurements to which he had testified.

*Negligence—Damages—Earning power—Probability life.*

5. On the trial of a negligence case where it appears that the plaintiff earned $1.80 a day, and that he would probably live for thirteen to fifteen years, the court commits no error in instructing the jury that the measure of damages is the present worth of the plaintiff's future earnings. It is not for the defendant against whom the verdict has gone, to complain because the trial judge in

connection with such instruction warned the jury not to take into consideration a claim made by the plaintiff's counsel that the capitalization of future earnings should be from $5,000 to $6,000.


Argued April 9, 1912. Appeal, No. 39, Jan. T., 1912, by defendant, from judgment of C. P. Luzerne Co., May T., 1909, No. 246, on verdict for plaintiff in case of John O'Brien v. Pennsylvania Coal Company. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCH-ZISKER, JJ. Affirmed.


Trespass to recover damages for personal injuries. Before JONES, J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $4,000.00 and judgment thereon.


While plaintiff's witness, James Flynn, was on the stand, he was asked the following question on cross examination:

"By Mr. McGahren: Q. You are willing to go there with any engineer or person whom the court will designate and verify this, are you?"

"By Mr. Lenahan: I object as highly improper."

"By Mr. McGahren: Q. Are you willing to accompany any man whom the court will designate to make this measurement at the point where you say, to prove the correctness of this?"

"The Court: I sustain the objection, note an exception and seal a bill for defendant." (10)


The Court charged in part as follows:

"Counsel for plaintiff has argued to you upon the reasonableness of the supposition that earning $1.80 a day he would probably live thirteen or fifteen years, that he would earn $540.00 a year and that during that time he would earn possibly five to six thousand dollars. The stenographer says that counsel stated that he had

capitalized it at five to six thousand dollars. You will observe that the interest on the amount capitalized at five to six thousand dollars would be from three hundred to three hundred and sixty dollars a year and that would cover almost or at least three-quarters of the amount of his earnings for a year, and that would still leave him the principal at the end of his life possibly intact. It is clear, gentlemen, you cannot apply any such arithmetical rule. You are to consider along with the argument of counsel the advantage to the plaintiff of a present payment to cover the whole period. It is the present worth, I repeat it, it is the present worth of his future earnings which is the measure of damages." (8)

Defendant introduced the following point:

"Ninth. The court is requested to instruct the jury that in the event that they find the plaintiff is entitled to recover damages on account of loss of earning power, as to the manner of ascertaining the present worth of the same and how the verdict as to damages should be capitalized in fixing the amount of the same."

By the Court: "As I stated to you, gentlemen, in passing upon this question on the loss of earning power, it is your duty first to consider whether the injury is permanent or temporary, and whether it will affect his earning capacity, how long he may reasonably be expected to live and to work, what amount of work he will probably perform and what wages he will probably earn and what amount they will probably have increased or diminished above or below a dollar and eighty cents which he was earning as he said, at the time of the accident, and, having arrived at his future earnings, then you determine from that what these future earnings are worth to-day. What is the present worth of these earnings? Determine, as I say, the future earnings in the manner which I have detailed to you. Having determined that, then it is for you to say what is the present worth of these future earnings." (7)

*Errors assigned* were, among others, (2) refusal to enter judgment for defendant; (7) answer to point; (8) portion of the charge; (10) ruling in evidence, as above.

*John McGahren,* with him *Warren, Knapp & O'Malley,* for appellant.—Where in the performance of his duties a servant assumes a position of danger, he is bound to use all available means to give notice thereof to his master and other servants, and cannot recover for injuries caused by his failure to do so: Cypher v. R. R. & Coal Co., 149 Pa. 359; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185.

When future payments are to be capitalized in a verdict, the plaintiff is only entitled to their present worth and the jury should have such guidance from the court as will give them an intelligent understanding of what this means: Goodhart v. Railroad Co., 177 Pa. 1; Wilkinson v. North East Boro., 215 Pa. 486; Pauza v. Coal Co., 231 Pa. 577; McLane v. Rys. Co., 230 Pa. 29.

*C. B. Lenahan,* with him *John T. Lenahan,* for appellee.

OPINION BY MR. JUSTICE BROWN, July 2, 1912:

At the time the appellee was injured he was in the employ of the appellant as a track repairer. It owned and operated a colliery in which there was a rock slope two hundred and twelve feet in length. On this there were two railways having a gauge of three feet each, with a space between them of two feet, to allow ascending and descending cars to pass. The bodies of the mine cars projected eight and one-half inches beyond the outside rail of each track. The space between the bodies of these cars and the side or rib of the slope was a matter in dispute on the trial. As the appellee was at work on one of the tracks a "trip" of loaded cars came down towards him and he attempted to escape it

by rushing to the side or rib next to the track upon which he was working. He stood upright there, with his back against the side, but the cars struck him and he was seriously injured. The negligence of which he complains was the failure of the appellant to observe rule 43, Article XII, of the Mining Act of June 2, 1891, P. L. 176, which provides that "every passage-way used by persons in any mines and also used for transportation of coal or other material, shall be made of sufficient width to permit persons to pass moving cars with safety, but if found impracticable to make any passage-way of sufficient width, then holes of ample dimensions, and not more than one hundred and fifty (150) feet apart, shall be made on one side of said passage-way. The said passage-way and safety holes shall be kept free from obstructions and shall be well drained." The statement specifically charges a disregard of this statutory duty and avers that, as a consequence of appellant's neglect in this respect, the appellee was injured. The jury found—and upon sufficient evidence—that the appellant had not regarded its duty as imposed upon it by the act of assembly.

Counsel for appellant seem to think, and earnestly so contend, that the appellee's case could not have gone to the jury but for the testimony of James Flynn as to the width of the slope, and that his testimony ought not to be regarded as sufficient to show that there had not been a safe passage-way between a moving car and the rib or side of the slope. In asking this court to so hold, reasons are given which might very fairly have been addressed to the jury in asking them not to credit Flynn's testimony, but it is not for us to say that "a reading of the testimony of this witness will show that the means which he adopted to qualify himself for his task were not such as any fair, unbiased, or reasonable man would sanction or approve to arrive at a correct result in a matter of so much importance." Whether a witness is fair and unbiased, or unfair and biased, is

exclusively for a jury, and if Flynn was to be believed by
the jury in this case, they could fairly have found, as
they probably did, notwithstanding what counsel for
appellant regard as discrepancies in his testimony, that
he knew, not only from his long familiarity with the
slope, but from actual measurements, that it was not of
the width testified to by the witnesses for the appellant,
and that a safe passage-way had not been maintained,
as required by the Act of 1891.   But the case was not
"finally submitted" to the jury on the testimony of
Flynn, as counsel for appellant contend.   Its negligence
was made out by the testimony of the plaintiff and one,
Luke Connors, as brief extracts from it will show.   The
plaintiff testified in part as follows: "Q. When you saw
the car coming down—the loaded trip coming down—
how far were you from it?   A. I was, maybe, about
thirty feet, might be a little more.   Q. How far was the
unloaded trip coming up from you—about the same dis-
tance?   A. About the same distance.   Q. Then when
you saw the car coming down and the one coming up,
what did you do?   A. I made for the rib.   Q. That is
you made for the side?   A. Yes, the side, that is the rib.
Q. Then what did you do?   A. I stood up to it.   Q.
Just come down and show the jury how you stood up
against the rib.   Suppose coming along here—— A. I
had not time.   I stood up this way, tried to save myself,
car come hit me and that is all I know.   Q. Wait.
About what was the distance from the track to the rib
at the place where you were struck?   Q. About how
far?   A. About eight inches.   (The Court.) By the
track you mean the outside rail?   Mr. Lenahan.   From
the outside rail, yes; the rail nearest the rib.   Q. What
then did the car do to you as you were standing there
against the rib?   A. It hit me and it dragged me a
piece until I fell under the car."   On cross-examination,
in describing the distance between the rib and the out-
side rail on the opposite track, the following appears in
his testimony:   "Q. There was a rope attached to this

empty car that was coming up? A. Yes, sir. Q. You could have stepped over that rope? A. Yes, but I would be just as bad that side as—I would be hit one side as bad as the other. Q. You would have been hit? A. Yes, the other trip would have hit me. Q. The body of the car on the light track did not run up against the rib; there was some space between the rib and the body of the car on the other side? A. Was not a foot. Q. You did not measure it to know? A. Of course I did, because the end of the tie went up against the rib. From the rail to the rib is no more than seven or eight inches. Q. The space on the other side—that is the light track —between that and the rib—between the car and the rib was wider than the right hand side, was it not? A. Not a bit." Connors, who had worked on the slope from the time it was first operated up to the time of the accident, and was entirely familiar with the situation, testified as follows: "Q. Whether or not you are familiar with the plane there? A. I am. Q. Taking a point about the middle of that slope or plane, what was the distance from the rail nearest the rib, what was the distance from that rail to the rib? Q. (Defendant's counsel.) Did you measure it? A. No, sir. Q. (Plaintiff's counsel.) Saw it frequently? A. Saw it often. I was going to mention how near I could do it by the eye. Q. What was the distance? A. I would call it about ten inches. Q. How about on the other side? A. Much the same." The defendant's negligence having been thus made out by the testimony of the plaintiff and his witness, if they were to be believed by the jury, the court submitted to them that question, as well as the contributory negligence of the plaintiff in not going over to the other side of the slope, in the following clear and correct instruction: "If after a careful consideration of all the testimony you are satisfied that there was no safe passage-way of sufficient width to permit persons to pass moving cars and that the plaintiff was not guilty of contributory negligence—that is, any negli-

gence on his part which contributed to the injury, that he was using due and reasonable care under the circumstances—then your verdict should be for the plaintiff. If, on the other hand, you believe that there was no space of sufficient width to permit persons to pass moving cars with safety on the left hand side but that there was a space of sufficient width to permit persons to pass with safety on the right hand side, even though the defendant company were negligent and violated the statute in not providing a passage-way on the left hand side, if the plaintiff could by reasonable care and diligence reach the right hand side and secure a place of safety it was his duty to do so, and even though the defendant was guilty of negligence the plaintiff could not recover, because it was his duty, if he could by exercising reasonable diligence and due care, to go to the side where a safe passage-way was provided. In passing upon this question as to whether he exercised due care and diligence it is your duty to take into consideration the conditions as they existed at the time of the accident—the plaintiff's age, his ability to reach the passage-way, if such there were, the location of the two tracks, the two moving ropes, one moving up and the other moving down the plane over which he would have to cross, and the danger, as he stated, of encountering the car on the other side—all these facts are for you to take into consideration in passing on the question of the plaintiff's contributory negligence and his duty to take reasonable care of himself, and whether or not he could have reached the other side, if there was a safe place at that point, bearing in mind the plaintiff was not obliged to put himself in danger in reaching that side." It is further contended that appellee was guilty of contributory negligence, and that the court should have so instructed the jury, because he had disregarded rule 21 of the Act of 1891, which is as follows: "When any person is about to descend or ascend a shaft or slope, the headman or footman, as the case may be, shall

inform the engineer by signal or otherwise of the fact, and the engineer shall return a signal before moving or starting the engine. In the absence of a headman or footman the person or persons about to descend or ascend shall give and receive the signals in the same manner." At the time the appellee was injured he was not about to descend or ascend the slope. For two hours prior thereto he had been at work about midway between the top and bottom. Rule 21 is, on its face, applicable to one who is about to "descend or ascend a shaft or slope," and the four rules immediately preceding it, to be read in connection with it, clearly show that it applies only to persons at the head or foot of a slope or shaft. Rule 17 prescribes the number of persons to be hoisted or lowered at one time; rule 18, the qualification of the engineer in charge of the engine; rule 19, how he shall work it, and rule 20, the signals for ascending or descending. The first, second, third, fourth, fifth and ninth assignments are overruled.

The sixth assignment complains of the refusal of the court to instruct the jury that the defendant company was not required to maintain a safe passage-way on both sides of the slope to permit a moving car to pass persons in safety. The purpose of the Act of 1891 is to provide for the safety of persons passing mining cars in coal mines. It is silent as to a passage-way on each side of a slope. It says nothing of the number of passage-ways to be maintained in mines. What it requires is that every passage-way used by persons in mines shall be of sufficient width to permit them to pass moving cars with safety. In the present case there were two tracks, and the Act of 1891 was for the safety of those upon either of them. To provide for such safety a passage-way on only one side of a slope might be insufficient, for here, even if there had been a safe one on the opposite side, the plaintiff could not, according to his testimony, have reached it without danger of being struck by the ascending car. A safe passage-way

on one side of a slope, without regard to its width or the number of tracks upon it, is not all that the Act of 1891 requires, and it has never been so held. One such passage-way may or may not be sufficient, and whether it is or is not must depend upon circumstances. In the present case the appellee was working on the track next to the side of the slope which did not have a safe passage-way. Suppose there had been a safe one on the other side; he could not have reached it in safety, and the affirmance of defendant's eighth point would have relieved the defendant entirely of the charge of negligence, if the jury should have found that there was a safe passage-way on the opposite side. In Reeder v. Lehigh Valley Coal Company, 231 Pa. 563, cited as an authority calling for the affirmance of the defendant's eighth point, there was but a single track; and a passage-way on one side of it, if of sufficient width and unobstructed, was all that the act required. The question raised by defendant's eighth point was neither raised nor passed upon in that case.

While the court's answer to defendant's ninth point, which is the subject of the seventh assignment, might have been fuller on the instruction asked for, we do not regard it as reversible error in view of what was said in portions of the general charge, not assigned as error, on the question of the measure of damages. That portion of the charge complained of by the eighth assignment was an instruction to the jury not to regard the "arithmetical rule" which counsel for plaintiff had given them for their guidance in passing upon the measure of damages. There is no reason why appellant should complain of this. The offer, the exclusion of which is the subject of the tenth assignment, might, if it had been allowed, have been the first step in a departure from the orderly trial of the cause, and there was no abuse of the court's discretion in overruling it.

1912.]                    Opinion of the Court.

If the appellant had so desired, the premises might, under the rules of court, have been viewed by the jury.

The assignments are all overruled and the judgment is affirmed.