## Musin v. Pryor Coal Company, Appellant.

*Negligence—Mines and mining—Mine foreman—Failure to provide supports—Act of June 9, 1911, P. L. 756.*

A mine owner is not liable for the negligent acts of a mine foreman committed in the discharge of duties imposed upon him by law and in and about those workings over which he exercises supervision.

In an action to recover damages for the death of a miner killed by a fall of slate from the roof of defendant's mine, where the declaration charges that the accident was caused by the neglect of the defendant to provide a sufficient supply of posts to hold up the roof, no recovery can be had, where there is no evidence that the mine foreman ever ordered from the superintendent any mine props that were not promptly furnished, or that any miner in any way made a complaint to the superintendent, or brought to his knowledge either in the manner prescribed by the rules of the mine, or otherwise, that there was any shortage of props or timbers.

In such a case the mine owner is protected by the provisions of Art. III, and Art. IV, of the Act of June 9, 1911, P. L. 756, which impose upon the mine foreman the duty of directing and seeing

"that every working place is properly secured by props or timbers," and of ordering the mine superintendent "to keep on hand at each mine at all times a sufficient quantity of materials and supplies required to preserve the health and safety of the employees."

Argued April 17, 1917. Appeal, No. 19, April T., 1917, by defendant, from judgment of C. P. Washington Co., Feb. T., 1915, No. 365, on verdict for plaintiff in case of Susan Musin, in her own right and in the right of her five minor children, John Musin et al. *v.* Pryor Coal Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before McILVAINE, P. J.

The pleadings and evidence in the case are summarized in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Error assigned* was in refusing judgment for defendant n. o. v.

*Rufus S. Marringer,* with him *Jas. A. Wiley,* for appellant.—The mine foreman is responsible for what happens in relation to the proper maintenance of appliances used in operation for mining coal in the mine: Reeder v. Lehigh Valley Coal Company, 231 Pa. 563; Lineoski v. Susquehanna Coal Co., 157 Pa. 153; Peters v. Vesta Coal Co., 243 Pa. 241.

*Harry Shapera,* with him *J. F. McFarland* and *J. J. Goldsmith,* for appellee, cited: Wolcutt v. Erie Coal & Coke Co., 226 Pa. 204; Rau v. Pittsburgh-Buffalo Co., 54 Pa. Superior Ct. 579.

OPINION BY HEAD, J., October 8, 1917:

The plaintiffs sue to recover damages suffered by them, by reason of the death of the husband and father

who was killed by a fall of slate from the roof of the defendant's mine, alleged to have resulted from the negligence of the owner.

The plaintiffs, in their declaration, state the basis of their action to be (a) it was the duty of the defendant to furnish to their employee a safe place in which to work "and at all times keep and furnish timbers or posts in sufficient numbers and of sufficient length and character to be placed under the roof or ceiling of the room" where the plaintiffs' decedent worked. "Notwithstanding this obligation, the said defendant carelessly and negligently failed, refused and neglected to provide a sufficient supply of posts of a proper kind, length and character to be set properly so as to hold up the roof of the room mine" where said decedent was at work.

This statement of the cause of action at once differentiates the case at bar from our recent one, Mish v. Lehigh Valley Coal Company, 67 Pa. Superior Ct. 27. That case followed two late ones in the Supreme Court, namely, Bogdanovicz v. Susquehanna Coal Co., 240 Pa. 124, and Smiers v. Collieries Co., 252 Pa. 415. In each one of these cases a recovery was permitted because the act of negligence established by the verdict was a failure on the part of the employer to properly instruct an inexperienced employee as to dangers incident to his work which were not so imminent and obvious as to be apprehended by every reasonable man in the possession of his natural senses. In each of those cases there was an effort made by the defendant company to relieve itself of liability on the ground that the negligent act, if any, was the act of the certified mine foreman and not that of the company. It was held that because our statute did not cast upon the mine foreman the duty and responsibility of giving such instructions, the owner could not be relieved of his general obligation along that line in any other way than by the performance of it.

On the other hand it has been many times held that where the negligent act causing the injury arose from

the failure of the mine foreman to faithfully discharge the duties imposed upon him by the statute, the owner or operator of the mine could not be held liable in damages. A single excerpt from the opinion of Mr. Justice ELKIN in Reeder v. Lehigh Val. Coal Co., 231 Pa. 563, very clearly states the principle we have in mind: "It has been held in a long line of cases that the mine owner is not liable for the negligent acts of a mine foreman committed in the discharge of duties imposed upon him by law and in and about those workings over which he exercises supervision. From Lehigh Valley Coal Co. v. Jones, 86 Pa. 432, and Durkin v. Kingston Coal Co., 171 Pa. 193, to Golden v. Mount Jessup Coal Co., 225 Pa. 164, this rule has remained unbroken. It may therefore be said to be settled law."

Our question then must turn upon an examination of the statute and an inquiry into the duties thereby cast respectively upon the owner, or his representative, and the certified mine foreman whose qualifications and duties are prescribed by the act itself. Article III of the Act of June 9, 1911, P. L. 756, deals with the duties of "mine superintendent" who may be regarded, for the purposes of this opinion, as the mine owner or operator because of his agency and employment. Section one declares "It shall be the duty of every superintendent, on behalf and at the expense of the operator, to keep on hand at each mine at all times a sufficient quantity of materials and supplies required to preserve the health and safety of the employees as ordered by the mine foreman and required by this act." Section two provides "The superintendent shall not obstruct the mine foreman or other officials in the fulfillment of any of their duties as required by this act, but he shall direct that the mine foreman and all the other employees under him comply with the law in all its provisions, especially when his attention is called by the inspector to any violation of the law." Article III then proceeds through eight different sections to prescribe the duties of the

mine superintendent in many different respects, but it nowhere utters a word directly in relation to mine posts or timbers. The reason is obvious. Indirectly his duty in respect to these is contained in that portion of the first section which requires him "to keep on hand at each mine at all times a sufficient quantity of all materials and supplies required......as ordered by the mine foreman and required by this act."

Article IV has for its subject the "mine foreman and his duties." It first requires that in every mine where ten or more persons are employed the owner must employ "a competent and practical mine foreman." It declares "The mine foreman shall have full charge of all the inside workings and of the persons employed therein." It then proceeds to specify his duties, if the mine be a gas producing mine, and generally with regard to its proper ventilation. In Sections 6 and 7 the legislature makes it plain its intent was to rely upon the judgment of the mine foreman rather than on that of the owner as to the number or quality of mine props and timbers necessary to keep the working places in a reasonably safe condition. As we have already seen, the obligation is on the mine owner to keep on hand a sufficient quantity, not only of such props and timbers, but of all other necessary "materials and supplies required to preserve the health and safety of the employees as ordered by the mine foreman and required by this act." We quote from Section 6 of Article IV, "The mine foreman shall direct and see that every working place is properly secured by props or timbers, and shall see that no person is directed or permitted to work in an unsafe place, unless it be for the purpose of making it safe. He shall also see that the workmen are provided with sufficient props, cap-pieces, and timbers of suitable size, which shall be delivered at the working faces, or as near thereto as they can be conveyed in mine cars, when requested by the workmen, in accordance with section seven of this article." Section 7: "Every workman

in need of props, cap-pieces, and timbers shall notify the mine foreman......of the fact, at least one day in advance, giving the number, size, and length of props, cap-pieces, and timbers required. If for any reason the necessary timbers cannot be supplied when required, the mine foreman or assistant mine foreman shall instruct the workmen to vacate the place until the timber needed is supplied. The place and manner of leaving the orders for props, cap-pieces, and timbers shall be designated and specified in the rules of the mine." Here then we have the clear, plain, unquestioned imposition by the legislature itself on the experienced mine foreman of the duty of seeing to it that the working places are provided with the necessary supports to make them reasonably safe. If his judgment be mistaken as to what is required, or if, through carelessness or indifference, he fail to make the necessary requisitions upon the owner, the injury that may follow must be ascribed to his neglect of duty rather than to that of the mine owner.

The record is barren of any particle of evidence that the mine foreman ever ordered from the superintendent any mine props or caps that were not promptly furnished or that any miner ever in any way made a complaint to the superintendent or brought to his knowledge, either in the manner prescribed by the rules of the mine or otherwise, there was any shortage of mine props or timbers. The absence of such evidence readily distinguishes the case at bar from Collins v. Northern Anthracite Coal Co., 241 Pa. 55, and Sudnik v. Susquehanna Coal Co., 257 Pa. 226. The opinion of Mr. Justice POTTER in the case first cited marks the line of distinction. After quoting with approval what has hereinbefore been quoted from the language of Mr. Justice ELKIN in the Reeder case, the opinion goes on: "But in the present case there was evidence which showed that the superintendent was notified of the necessity for props, and of the failure of the mine foreman to furnish them, and that the superintendent then said he would see that the props

were sent right away.   This evidence brings the case within the operation of the principle declared in Dempsey v. Buck Run Coal Co., 227 Pa. 571, where Mr. Justice MESTREZAT, inter alia, said: 'If to the owner's knowledge the mine foreman or any other employee is neglecting the performance of his duties or the mine is in a condition which endangers the health or safety of the workmen, it is the duty of the owner to act promptly and have the dangers to the safety of the men removed.' " In the latest case above cited, Sudnik v. Coal Company, supra, Mr. Justice MOSCHZISKER concludes his opinion with this statement, viz: "Under the facts in this case Collins v. Northern Anthracite Coal Co., 241 Pa. 55, is a controlling authority which the learned court below very properly followed."

There is no evidence of the size of the mine, the number of actual rooms or working places or of the men employed to operate them, nothing as to the number of mine posts necessary to reasonably protect the men in their working places, nothing as to the quantity of such posts purchased by the company and available to answer any requisition of the mine foreman.   Yet every book, record, report, etc., in the possession of the company could have been produced in evidence on a legal demand for its production by the plaintiffs.   We are not surprised therefore that the learned and experienced trial judge, in his opinion refusing to enter a judgment n. o. v., declared: "As we remarked at the argument of this motion and also during the trial, the plaintiffs' testimony, showing negligence on the part of the defendant company, was meager and to the court unsatisfactory, etc."   But we feel compelled to go a step further and give it as our judgment that the evidence furnishes no sound or enduring basis for a recovery against the defendant.   For it is apparent that in respect to the coal mining industry in Pennsylvania, our statutes have wrought many changes in the old-time relation of master and servant.   The former is no longer in the untram-

melled control of his own business. A third party, greater than either master or servant, has injected itself into their relation to each other. The master must employ an individual from a class selected by the State. Not the master but the State prescribes the duties to be performed by the mine foreman. From the latter, not the former, he derives his great powers and is invested with his great responsibilities. He is certified by the State to be experienced and practical as to the inside workings of a coal mine. The owner cannot always claim to be. The State has therefore said as to many of the underground operations of a coal mine, it is the judgment of the mine foreman, not that of the owner, that shall control. We are unable to point out in the record any evidence the owner failed in the performance of any duty imposed on him by the State which has superseded the old law in so far as it has transferred to another the duties and powers that theretofore resided in the master.

It is to be regretted that the prosecution of an industry, so vital to the people of this State as the mining of coal, involves much hazard even where the mines are conducted in the light of the best knowledge attainable by those who operate them. Probably for this reason the legislature has not seen fit to rely on the knowledge, the judgment or the care of the mine operator as to the manner in which the inside workings shall be maintained and the operations conducted. It has set up a class of men whose qualifications are prescribed and whose fitness is to be ascertained through methods declared by the statutes. The mine operator is obliged to employ one or more of these experienced men whose fitness has been declared by certificate. The statute, in establishing these responsibilities on the part of the mine foremen, has given to them complete and drastic power to enforce their demands upon the mine owner and thus responsibility and authority have gone hand in hand to these representatives of the State's police

power, not of the mine owner or operator.   We are of opinion the learned trial judge should have directed a verdict for the defendant, and this being true, that he should have thereafter entered a judgment for the defendant upon the whole record notwithstanding the verdict.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment for the defendant n. o. v.