[Civ. No. 2203.     Third Appellate District.—August 25, 1920.]

ELLA RYAN, as Executrix, etc., et al., Petitioners, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

[1] RED-LIGHT ABATEMENT ACT—CANCELLATION OF ORDER OF ABATEMENT—DISCRETION OF TRIAL COURT—BURDEN OF SHOWING GOOD FAITH—FINDING.—By the use of the word "may" in section 9 of the Red-light Abatement Act, providing that, upon certain conditions in that section specified, the court may, if satisfied of the good faith of the applicant, cancel its previous order of abatement and order the premises reopened, the legislature intended to vest discretion in trial court in granting or refusing an application to reopen; and upon such an application the burden rests upon the applicant to show his good faith, and the court is required to determine the existence of this good faith the same as it would determine another question of fact.

APPLICATION for a Writ of Mandate to compel the cancellation of an order of abatement entered in a proceeding under the Red-light Abatement Act. Petition dismissed.

The facts are stated in the opinion of the court.

Meredith, Landis & Chester and White, Miller, Needham & Harber for Petitioners.

Hugh B. Bradford, District Attorney, and J. R. Hughes, Assistant District Attorney, for Respondents.

Edwin E. Grant, *Amicus Curiae.*

PREWETT, P. J., *pro tem.*—The people of the state of California, on the relation of the district attorney of said

county, brought an action against said petitioners under the provisions of the Red-light Abatement Act (Stats. 1913, p. 20) to enjoin the maintenance of a nuisance on certain premises known as the Casino Dance Hall. The court, on the trial, found that the nuisance existed and in due course entered its decree for the abatement thereof. This decree was subsequently affirmed on appeal. Thereafter, the petitioners made application to said superior court for an order directing the delivery to the owners of the property affected by the decree and canceling the order of abatement. The petitioners offered to execute the bond required by said act and to pay the costs theretofore incurred.

[1] Section 9 of said act provides that the court, if satisfied of the good faith of the applicant, *may* order the premises reopened. The entry of such an order is in the discretion of the trial court. While it is true that the word "may" is sometimes construed to mean "must" where it is evident that the legislature so intended it, still, in view of the purposes of the Red-light Abatement Act, the character of the evil to be dealt with and the difficulty in establishing evasion of the decree, it is evident that the legislature intended to vest discretion in the trial court in granting or refusing an application to reopen.

Moreover, the trial court must be satisfied of the good faith of the applicant. No showing of such good faith was attempted. Indeed, no evidence was offered upon the point. The burden rests upon the petitioners to show their good faith. The court is required to determine the existence of this good faith the same as it would determine any other question of fact.

The demurrer is sustained and the petition dismissed.

BURNETT, J., Concurring.—I concur in Judge Prewett's opinion and in the conclusion reached by him, but as the matter is of considerable importance, I desire to express my views a little more fully.

An action was brought in the superior court of Sacramento County under the provisions of the so-called Red-light Abatement Act to enjoin the maintenance of a nuisance on the premises known as the "Casino Dance Hall" and to abate the use of such property for any purpose. The action was tried in said court, the Honorable Charles O.

Busick presiding, and judgment was rendered in accordance with the prayer of the complaint. The cause was carried through the higher courts and the judgment was affirmed. The *remittitur* was received and filed by the clerk of the trial court, and a few days thereafter petitioners herein made application to said court: (1) To fix and establish the full value of the property involved; (2) To accept the payment of all the costs as taxed in said action; (3) To accept a bond, conditioned as in section 9 of the Red-light Abatement Act provided, with sureties satisfactory to said judge; (4) Thereupon to order the cancellation of the abatement portion of such judgment so as to permit the use of the premises involved for all lawful and legitimate purposes.

Petitioners base their claim upon the provisions found in section 9 of said act (Stats. 1913, p. 22), as follows: "If the owner of the building or place has not been guilty of any contempt of court in the proceedings and appears and pays all costs, fees and allowances which are a lien on the building or place and files a bond in the full value of the property, to be ascertained by the court, with sureties, to be approved by the court or judge, conditioned that he will immediately abate any such nuisance that may exist at such building or place and prevent the same from being established or kept thereat within a period of one year thereafter, the court, or judge thereof, may, if satisfied of his good faith, order the premises closed under the order of abatement, to be delivered to said owner, and said order of abatement canceled so far as the same may relate to said property."

The petition herein alleges that neither of said petitioners has been or is now guilty of any contempt of court in said matter, it sets out the amount of costs, etc., which is a lien upon said building, the full value of the property involved herein, avers that no nuisance, as the same is defined in said Red-light Abatement Act, now exists on said premises or property, and proceeds: "That heretofore and on the 10th day of May, 1920, the petitioner, Ella Ryan, as executrix of the estate of Mary Sweeney, deceased, appeared in said superior court and before the said Hon. Charles O. Busick, judge in said proceeding No. 22797 hereinbefore more particularly referred to, and offered to pay

all costs, fees and allowances which were then or are now a lien on the building and property hereinbefore described, and tendered the said court and judge the sum of $77.00 which the said court and the said Hon. Charles O. Busick, judge thereof, then and there refused to accept; that thereupon and then and there said petitioner paid the said sum of $77.00 to the clerk of said court in said proceeding in full payment of all the costs, fees and allowances in said action.

"That thereafter and on the said 10th day of May, 1920, in said proceedings and in said court and before said judge thereof, the said petitioner, Ella Ryan, as executrix of the estate of Mary Sweeney, deceased, requested and demanded of said court and judge" that he ascertain and fix the full value of said property, and promised that thereupon said petitioner would execute a bond in such sum with sureties satisfactory to and to be approved by said judge, "conditioned that she would immediately abate any nuisance, as defined in said Red-light Abatement Act, that might exist at said building or property hereinbefore described, and would prevent any nuisance, as the same is defined in said Red-light Abatement Act, from being established or kept thereat or thereon within a period of one year thereafter; that said petitioner did at said time and place petition said court, in the event of said bond, in the amount to be specified by said court and with the sureties satisfactory to and to be approved by said court, being presented to said court, to order the said order of abatement canceled, so far as the same related to the said property hereinbefore described and in said action involved.

"That the said application of said petitioner to said court was and is made in absolute good faith and with the full and true intention and desire to prevent the establishment or maintenance of any nuisance as the same is defined in said Red-light Abatement Act, on said premises for the term of one year."

Then follows an allegation that said petitioner at the same time and place offered in open court to furnish a watchman or watchmen to be approved by said court and to be paid by petitioners to see that the conditions of said bond were observed. The petition herein proceeds: "That no evidence, oral or documentary, was offered or received by the court other than is herein set forth, and there was no evidence,

oral or documentary, offered or received tending to show any lack of good faith on the part of said petitioner in said proceedings had and done by her as hereinbefore set forth.'' It is further alleged that said judge refused and still refuses to ascertain and fix the value of said property or to accept any bond in said matter or to order said premises delivered to said petitioner or to cancel said order of abatement as far as the same relates to said property, but, on the contrary, has ordered the sheriff to sell the personal property and to close said building against its use for any purpose for the term of one year, that said action of the court and of the judge thereof ''was and is without good or sufficient reason, or any good or any reason, and was and is willful, capricious, and without any authority of law and in direct violation of the plain provisions of the statute in such cases made and provided.''

The principles that control the issuance of the writ of mandate have frequently been considered by this and other reviewing courts and there is no need herein for a full exposition of them. It is sufficient to say that before we are authorized to issue the writ, it must appear that the lower court has violated a duty imposed upon it by statute. That duty may consist in obedience to a plain mandatory direction of the law wherein there is no room for discussion or option, or the statute may be formulated and projected in such terms as to confer upon the officer facultative or discretionary authority. Herein, it is manifest that the trial judge is called upon to exercise his conscientious judgment in each particular case. This follows from the use of the term *may* and also the provision that the court *must be satisfied* of the good faith of the owner. Unquestionably this does not mean that the judge may act capriciously or arbitrarily or without reason, but it contemplates what the law recognizes as a just discretion, and if the decision of the court upon the case presented may be justified upon any reasonable ground, then the court's action is not subject to successful attack, at least by writ of mandate. However, if there has been what is denominated in the law an *abuse* of *discretion,* that is, if it appears clearly that the court has decided arbitrarily and without reason, the decision may be undone through the office of this writ. But to reach this result, facts must be presented to

the higher tribunal from which the inference necessarily follows that the lower tribunal has so acted capriciously and without reason. It can avail nothing to allege that the action of the lower court "was and is without good or sufficient reason, or any good or any reason," etc., as this constitutes a mere conclusion and is without value independent of the facts upon which it is based. The particular vice of the petition herein is in assuming that the precedent facts upon which the right of petitioners to have said property restored to their use for lawful purposes must be alleged and shown in this court rather than in the court below. The truth is, however, that before it can be claimed that the trial court has acted contrary to the law or has abused its discretion, it must appear that all the facts entitling petitioners to such relief were presented and proved in the court below or else that said court refused to permit such showing to be made. There is no allegation of such refusal; therefore, we look to the petition to see what facts were presented to said court. We have already set them forth and it is clear that they are utterly insufficient to show that it was the trial court's duty to grant the relief that was asked by petitioners. To justify a demand for the cancellation of the order of abatement it was incumbent upon the owner to show that he "had not been guilty of any contempt of court in the proceedings." It is true that such allegation is made in this court, but there is no specific averment that he either made such allegation in the court below or offered any evidence to prove it. Again, the court below must be *satisfied* of the *good faith* of the owner. How can the court be satisfied without a showing? It is difficult to say just what proof should be offered to produce that result, but at least it should have appeared by suitable averment and been established by proof that the owner was then conducting a lawful business in a lawful manner. Nothing of the kind occurred, judging from the allegations of the petition herein. The presumption is, of course, that they have stated their case as strongly as possible, and if such showing had been made we would be apprised of it. Moreover, they have expressly negatived any such condition, by alleging, as we have seen, "That no evidence, oral or documentary, was offered or received by the court other than is herein set forth."

The fact is that, if we may look to the transcript of the proceedings before the trial court, which was submitted at the oral argument herein, we find that the only evidence on these important questions considered in the court below was the showing made at the trial of the main action. As to that, the court said: "The evidence was very strong showing that the place was openly conducted in violation of the Red-light Abatement Act, and the testimony taken, offered in behalf of the defense, was, openly presented in court, perjured testimony," and further, that the witnesses who thus perjured themselves did so with the knowledge and acquiescence of the proprietors, that these witnesses testified to many things that were conclusively established in the action to be false, and it must have been within the knowledge of the owners of said property. Even if it were conceded that it was an error for the trial judge to consider in this proceeding such testimony as was received in the original trial, such error could not be reviewed on an application for this writ. The fact remains that the only evidence offered or considered as to the good faith of the owners could hardly be said in the most charitable view to be likely to make a favorable impression upon the mind of the judge disposed to enforce the law.

In a word, this extraordinary writ is issued "to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station" (sec. 1085, Code Civ. Proc.); before it may be ordered, it must clearly appear that the situation was such before the "inferior tribunal"; in other words, that the facts were so presented and proved or admitted that the law demanded a certain course of action on the part of such tribunal, which it declined or failed to pursue.

Such is not the case here, as has been shown. Said omissions from the petition are vital, and as all intendments and presumptions are in favor of the regularity and validity of the proceedings in the court below, petitioners have utterly failed to make out a case herein. I am authorized by Justice Hart, who is temporarily absent, to state that he concurs in this conclusion.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 21, 1920.

All the Justices concurred.