[Civil No. 2975.   Filed November 21, 1930.]

[292 Pac. 1099.]

INDUSTRIAL COMMISSION OF ARIZONA, Plaintiff, v. CHARLES R. PRICE, Treasurer of the State of Arizona, and JOHN C. PHILLIPS, Governor of the State of Arizona, Defendants.

Mr. John J. Taheny, for Plaintiff.

Mr. K. Berry Peterson, Attorney General, and Mr. Charles L. Strouss, Assistant Attorney General, for Defendants.

ROSS, J.—This is an original action in *mandamus* brought by the Industrial Commission against the Governor and Treasurer of the state, for the purpose of having determined the right and power of the commission to fix the compensation of employees without first obtaining approval thereof by the Governor.

In response to the order and citation to show cause, the defendants, through the Attorney General of the state, moved that certain allegations of the complaint be stricken as redundant and immaterial, and also demurred to the complaint for insufficient facts.

We regard the question raised by the demurrer the vital and decisive one, and for that reason will not encumber this opinion with a statement of the matters asked to be stricken, as they have no bearing one way or the other upon the legal aspect of the question involved.

Besides orally arguing the case, both sides have filed extensive, helpful and well-considered briefs setting forth their respective views of the law, with citation of authorities in support thereof.

The facts upon which the action is based are as follows: Prior to December 16, 1929, the commission had in its employment, as its actuary, attorney, and examiner, one John J. Taheny, at a monthly salary of $500. On or about that date the commission increased such employee's salary to $600 per month, payable in equal installments semi-monthly, and thereafter issued its voucher, regular in form, to said Taheny for $300 for the half-monthly period ending February 28, 1930, directed to the Treasurer for

payment out of the state compensation fund. When the voucher was presented to the Treasurer, he refused to pay it because the compensation of $600 per month had been theretofore disapproved by the Governor.

It is well settled, not only by statute (section 4396, Revised Code of 1928), but by the decisions of this court, that a writ of *mandamus* will issue to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station. It is likewise the law that *mandamus* cannot be employed to control the action or judgment of an inferior tribunal, corporation, board or officer, invested with a discretion. *Prina* v. *Board of Supervisors*, 16 Ariz. 252, 143 Pac. 567; *Ryan* v. *Superior Court*, 49 Cal. App. 71, 192 Pac. 1036.

Whether it is contemplated by the statute that the Governor of the state should have any part in the matter of the employment and the fixing of the compensation of the employees of the commission must be ascertained by the legislative language used in that connection. That language is found in section 1395, Revised Code of 1928, being a part of the chapter creating the Industrial Commission and providing for workmen's compensation and establishing a compensation fund. It reads:

"The commission may employ actuaries, accountants, inspectors, examiners, experts, clerks, physicians and other assistants, and fix their compensation. Such employment and their compensation shall be first approved by the governor, and together with necessary traveling expenses allowed by the commission, shall be paid out of the state compensation fund. . . . "

It is the contention of the commission that this section contains no limitation upon its power to employ necessary help, or to fix their compensation. It is said the commission is the sole judge as to both, and that, if the Governor has any duty in that con-

nection, it is only a ministerial duty. With all due deference to the contention, we cannot see it that way. It seems to us that the legislative intent is plain and clear that the Governor shall have a certain control or supervision of the number and necessity of employees employed by the Commission and also of their compensation. We think the language is not susceptible of any other interpretation or construction than that the Governor must first approve, not only of the employment, but also of the compensation. He may not employ the employees of the Commission, nor may he fix their compensation. These are things for the Commission to do, but on the Governor is conferred in plainest language the power to veto such employment and compensation if they do not meet with his approval. He shall first approve of such employment and compensation to make them legal. The Governor has nothing to say as to who the employees shall be, but much to say as to their necessity. He has nothing to say as to the fixing of their compensation, but, if such compensation as fixed by the Commission seems to him to be excessive, he may refuse to approve it.

But it is said this veto power of the Governor will enable him to dominate the Commission and its administration of the Workmen's Compensation Act— a clear violation of the spirit of the act. The evident legislative purpose in conferring upon the executive this power was to place a check upon the Commission in the expenditure of the compensation fund for assistants and aids and to save as much thereof as possible for disabled workmen and their families. *Wykoff* v. *W. H. Wheeler & Co.*, 38 Okl. 771, 135 Pac. 399. Such checks upon officials having the expenditure of public moneys are not unusual and are not confined to the Commission. The law provides that county officers may appoint deputies with the consent of and at salaries fixed by the board of super-

visors. Section 2798, Rev. Code 1928; *Worsley* v.
*Cochise County,* 22 Ariz. 225, 196 Pac. 419, involved
the right of a deputy county attorney to recover com-
pensation from the county when no compensation had
been fixed by the board of supervisors before the
services were rendered. We held that no recovery
could be had, however meritorious or beneficial to
the county the services may have been. The differ-
ence in detail between that statute and the one we
are considering is that in the former the board of
supervisors must first fix the compensation and in
the latter the Governor must first approve the com-
pensation fixed by the Industrial Commission. In
principle, the rule applied in the Worsley case con-
trols this case.

The legislature, instead of itself limiting the num-
ber of employees that the Commission should have or
fixing their salaries, preferred rather to impose that
duty upon the Executive, whose means and opportuni-
ties of investigation would enable him the better to
know the service needs of the Commission and the
value of such services to the state.

If we give to the words of the statute their ordi-
nary and common meaning, there is no escape from
the conclusion that the legislature intended that the
Governor should give his approval of the compensa-
tion to be paid employees of the Commission before
such compensation can be legally paid.

We have not called to our aid, in order to ascer-
tain the legislative intent, the numerous rules of
construction or interpretation employed by courts
when the statute to be construed or interpreted is
ambiguous, for the reason that the statute here being
considered is not ambiguous or of doubtful meaning.
Its meaning may be discovered from its own lan-
guage without any extrinsic aids of interpretation or
construction. It is said, in 25 R. C. L. 962, section
217:

"When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning."

It is obvious that the Governor, in passing upon the compensation proposed to be paid by the Commission to an employee, exercises judgment and discretion, and, that being so, *mandamus* will not lie.

The temporary writ is quashed and the complaint dismissed.

LOCKWOOD, C. J., and McALISTER, J., concur.