[Civil No. 4371.   Filed March 6, 1941.]

[111 Pac. (2d) 65.]

## W. J. McGINNESS, Plaintiff, v. JOE HUNT, Treasurer of the State of Arizona, Defendant.

Mr. George M. Hill, for Plaintiff.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Assistant Attorney General, for Defendant.

ROSS, J.—This is an original proceeding in *mandamus* against the Treasurer of the State of Arizona, Joe Hunt, to compel him to pay plaintiff, W. J. McGinness, his salary as stenographic reporter for The Industrial Commission of Arizona for the second half

of the month of January, 1941. The defendant treasurer has moved to dismiss the alternative writ and complaint on the ground that these pleadings do not show facts upon which relief can be granted the plaintiff.

It appears from the complaint that the reason the state treasurer declined to pay plaintiff's voucher for salary was a letter from the Governor of Arizona in words as follows:

"Hon. Joe Hunt
    "State Treasurer
    "State House
    "Phoenix, Arizona.
"My dear Mr. Treasurer:
    "May I not call your attention to the fact that Paragraph 1395, Revised Code of Arizona, 1928, requires the Governor to approve employment, and also the compensation, of employees of the Industrial Commission and may I not further call your attention to the fact that no list of employees, or salaries paid, has been presented to me by the above-mentioned Industrial Commission.

"Sincerely,
Sidney P. Osborn, Governor."

and also an opinion of the attorney general advising him that the governor of the state "has control over the number of employees which the Industrial Commission may retain and the amount of their compensation."

In view of these communications, it was but natural that the treasurer should decline to pay the voucher until the question was settled by the courts.

The section of the statute referred to by the governor is found in the Arizona Code of 1939 and, as far as material, reads as follows:

"56–905. Commission employees, compensation expenses. The commission may employ actuaries, accountants, inspectors, examiners, experts, clerks,

physicians and other assistants, and fix their compensation. Such employment and their compensation shall be first approved by the governor, and together with necessary traveling expenses allowed by the commission, shall be paid out of the state compensation fund. . . . ''

We have heretofore decided that the number of employees the Industrial Commission may employ and their salaries ''shall be first approved by the governor.'' The first case, in which the question of the power of the commission to fix the compensation of an employee without concurrence of the governor, is *Industrial Commission* v. *Price,* 37 Ariz. 245, 292 Pac. 1099. In that case the commission undertook to increase the salary of one of its employees from five hundred to six hundred dollars per month and the state treasurer, Charles R. Price, refused to pay the increase, contending the increase could not be made without the approval of the governor first being obtained. After quoting the above statute, we said:

''It is the contention of the commission that this section contains no limitation upon its power to employ necessary help, or to fix their compensation. It is said the commission is the sole judge as to both, and that, if the Governor has any duty in that connection, it is only a ministerial duty. With all due deference to the contention, we cannot see it that way. It seems to us that the legislative intent is plain and clear that the Governor shall have a certain control or supervision of the number and necessity of employees employed by the commission and also of their compensation. We think the language is not susceptible of any other interpretation or construction than that the Governor must first approve, not only of the employment, but also of the compensation. He may not employ the employees of the commission, nor may he fix their compensation. These are things for the commission to do, but on the Governor is conferred in plainest language the power to veto such employment and compensation if they do not meet with his

approval. He shall first approve of such employment and compensation to make them legal. The Governor has nothing to say as to who the employees shall be, but much to say as to their necessity. He has nothing to say as to the fixing of their compensation, but, if such compensation as fixed by the commission seems to him to be excessive, he may refuse to approve it."

Again, in *Sims* v. *Moeur*, 41 Ariz. 486, 19 Pac. (2d) 679, upon a different state of facts, we reaffirmed what we said in the Price case. In the Sims case it was the contention of the then commission that it had the power to engage the services of persons and fix their compensation to oppose an initiated measure to repeal the workmen's compensation law, and that they were within their rights when they employed attorneys to fight such effort in the courts and numerous individuals to electioneer against such measure, and pay them out of the state compensation fund. The court ruled that the state compensation fund could not be used for such purposes. The court also stated that the records of the commission should show who were employed, even when the employment is for a legal purpose; also the salaries to be paid them, and that their employment and compensation had been approved by the governor of the state.

It appears from the complaint that the commission entered an order for the employment of a reporter on July 1, 1940, at a salary of $250 per month; that thereafter, on July 12, 1940, as shown by the commission's records, such order was submitted to and approved by the then governor and copies thereof were on the same day delivered to the governor and state treasurer. This order has not been altered or changed.

The attorney general contends that the approval of the employment of a reporter and the compensation therefor must be by the present incumbent of the governor's office and not by a predecessor in

that office; whereas the plaintiff insists that neither the language of the statute nor the decisions of this court give any support to such a contention. He contends the approval should be by no particular governor but by any governor. He says the office of governor is a continuing one and its powers and duties are not in the person who occupies it but pertain to the office. The governor may change but the office persists, with whatever power that has been attached to it. The executive power never ends but governors do. *Barrett* v. *Duff*, 114 Kan. 220, 217 Pac. 918. This must be so in a government of laws and not of men. Each incumbent performs the duties and exercises the rights the law gives him power over and when his acts are authorized they are, generally speaking, binding on all persons including his successor in office. For instance, if the governor is authorized to make an appointment of an officer with the advice and consent of the senate and the two have concurred in such appointment, the tenure of the appointee may extend beyond the governor's term. If he approve a law passed by the legislature, it is as binding upon his successor as upon any other citizen. By analogy, if he approves of the employment and the compensation fixed therefor by the Industrial Commission as provided by the statute, such approval extends beyond his term and into that of his successor and until changed by the concurrent action of the commission and the governor.

If this were not the law, it can readily be seen that employees of the commission, who continue to perform services beyond the termination of the term of a governor, would run the risk of getting no compensation for their services. In other words, their employment and compensation would be coterminous with the term of each new governor. At the beginning of the term of a new governor, the commission

would have to submit to him a list of the employees and their respective salaries and secure his approval thereof, and if he should veto, as he might, the employments and salaries, the commission would have no help to discharge its many and important duties. If each new governor possessed such power, it could be used to do great injustice to honest employees and to disrupt the public service for which the commission was constituted. It certainly never was intended that the veto power conferred on the governor should be applied to employments and compensations that had been approved by a predecessor in that office. As to such, we think he is as powerless as he would be to nullify a law approved by a predecessor.

The attorney general, however, argues that each governor should have the power upon being inducted into office, or at any time thereafter, if satisfied the commission was employing more persons than needed to do the work, or was paying too high salaries, to reduce the number and the salaries. There is no question of too many employees or high salaries but, if there were, the very terms of the statute deny the governor the suggested right. It is the commission that determines what employees it will employ and what salaries it will pay. The governor is given no power to appoint employees or fix their salaries, nor may he participate therein other than to approve or disapprove. If he approves, and men and women are employed thereunder and render services, neither he nor his successor has any power to stop their pay.

There is room for disagreement with the attorney general in his claim that the governor should have control of the number of employees and their salaries. It could reasonably be argued that, since we have no civil service, each head of an office, a department, and each board and commission should be allowed to choose its own employees.

We think the plaintiff is entitled to the relief asked, and that the peremptory writ of *mandamus* should issue directing the treasurer to pay plaintiff's salary. It is so ordered.

LOCKWOOD, C. J., and McALISTER, J., concur.