# Court of Appeals.

## January 17, 1893.

## PEOPLE v. JOHN M. D. FANSHAWE.

### (50 St. Rep. 1; 137 N. Y. 68.)

**1. Arson—Intent.**

The fact that a person wilfully sets fire to a house in the night where human beings are at the time, evidences such moral depravity and such a reckless disregard of human life as to constitute the offense of arson, irrespective of the actual motive from which the act proceeds.

**2. Same.**

The fact that the defendant sets fire to his room for the purpose of destroying the property insured, in order to defraud the insurance company, and not to destroy the building, does not change the character of the offense.

**3. Same—Indictment.**

Intent to destroy the building need not be charged in the indictment, nor proved upon the trial.

**4. Same—Section 490 of Penal Code.**

Section 490 of the Penal Code does not qualify the definition of arson in the first degree.

**5. Same.**

> It simply limits the broad language of the section which defines arson in the third degree.

**6. Trial—Jury.**

> Where a juror testifies that before he will convict a person of arson in the first degree upon circumstantial evidence, it will have to be such as to leave no doubt whatever upon his mind, and to the question asked by the recorder, "Suppose the court was further to instruct you that if all the circumstances as they were developed by the evidence in the ·case pointed in one direction, beyond a reasonable doubt, and if it did it was to be received and treated in the same way as you would that direct evidence, would you do so?" and answered, "I don't think I would," there is no error in the exclusion of the juror.

Appeal from judgment of the supreme court, general term, first department, affirming judgment of court of general sessions convicting defendant of arson, and affirming orders denying motions for arrest of judgment and a new trial.

Charles W. Brooke, for appellant.

Henry B. B. Stapler, for respondents.

O'BRIEN, J.—The defendant was convicted of the crime of arson in the first degree, upon proof, sufficient for the consideration of the jury, that he willfully and maliciously set fire to a lodging house in the city of New York, in the nighttime, and in which there were lodging at the time fifteen or twenty persons. The defendant had a room in the house, and the proof tended to show that the fire originated in this room. He had a trunk in the room containing his personal effects, which were insured for one thousand dollars, and this property was partially destroyed before the fire in the room was extinguished. The proof tended to show that this property was insured for much more than its value, and it appeared that though the defendant, in his proofs of loss, stated the value at over $1,500, the claim was settled with the insurance company for $350. The defendant's counsel assumes, as we understand him, that the intent was to destroy the trunk and other personal effects insured for the purpose of defrauding the insurance company, but insists that the

defendant could not be convicted of arson in the first degree if he set the fire in his room with this intent. His position is that a lawful conviction could not have been obtained upon the facts, as it was not charged in the indictment, nor established by any proof whatever, that the defendant set the fire with the intent to destroy the building. It is obvious that if the learned counsel is right in his contention, that an intent to destroy the building set on fire is a necessary element in the crime of arson in the first degree, then this conviction cannot be upheld. It is clear that such intent was not a necessary element of the crime as it existed at common law, or under any statutory definition prevailing in this state prior to the enactment of the present Penal Code. At common law, the offense was defined as the wilful and malicious burning of another's house. 4 Black. Com. 221; 2 Bishop's Crim. Law, chap. 2, § 8; 2 Wharton's Crim. Law, § 1658. It has always been regarded as an offense of great malignity, and was formerly punishable with death. Even under our statute, prior to the Penal Code, arson in the first degree was classed among capital crimes, and was punished in the same manner as murder in the second degree. 3 R. S. (7th ed.) 2472. It was always looked upon as a crime that endangered human life, and the security of human habitations, and hence deserving of severer punishment than any offense aimed at the destruction of property merely. The statutory definitions of the crime, that have long existed in this state, have embraced different degrees, many of which were framed, doubtless, for the protection of property. But the act of setting fire to a dwelling-house in the night time, in which human beings were lodged, has always been classed as an offense ranking with murder in its enormity, and its dangerous consequences to society, and it was never supposed that the particular intent or motive that prompted so dangerous an act was a necessary element of the crime, so long as the act itself was willful and malicious. When it was shown that a person wilfully set fire to a house in the night where human beings were at the time, it was supposed that this act alone evidenced such moral depravity and such a reckless disregard of human life as to constitute the offense, irrespective of the actual motive from which the act proceeded. So that, if it be true that the defendant in

this case set fire to his room for the purpose of destroying the property insured, in order to defraud the insurance company, and not to destroy the buildings, this would not change the character of the offense, as the law on this subject has heretofore been understood.

All this the learned counsel for the defendant contends has been changed by the provisions of the Penal Code, and thus it becomes necessary to inquire whether the legislature intended to have in fact, worked such an important change in the law by the passage of that statute. While it was intended to define all criminal offenses, it was reversion of prior laws on this subject and a substitute for the scattered and fragmentary legislation that preceded it, and must be construed with reference to the law which it replaced. Where an offense is defined in the same language as was employed before, or substantially the same, it will be presumed that no change was intended, unless the legislative intent in that direction is clear. People v. Jaehne, 103 N. Y. 193; 3 St. Rep. 11; People v. Stevens, 109 N. Y. 162; 14 St. Rep. 808; People v. Richards, 108 N. Y. 144; 13 St. Rep. 515; People v. Palmer, 109 N. Y. 110; 15 St. Rep. 78. Prior to the enactment of the Penal Code arson was defined by statute in this state and divided into four degrees, and many of the acts embraced within the different degrees of the crime were obviously injurious to property merely. In the Penal Code the fourth degree has been dropped out, and all acts amounting to arson are concisely stated in three sections, defining three degrees of crime. Section 486 declares that a person who wilfully burns or sets on fire in the night time a dwelling-house in which there is, at the time, a human being, is guilty of arson in the firse degree. This case is certainly within the words of that section unless it is limited and modified by some other provision. In the two following sections the second and third degrees of the crime are defined, and then the punishment is prescribed in the next section. Then follows section 490, which reads as follows: "The burning of a building under circumstances which shows beyond a reasonable doubt that there was no intent to destroy it, is not arson." The learned counsel for the defendant insists that this provision must read in connection with section 486, which defines arson in the first degree,

and when thus read, the intent to destroy the building is an essential element of the crime which must be alleged and proved. As before observed, arson does not belong to that class of offenses which requires a specific intent to do the particular thing charged in distinction from general malice. 2 Bishop on Crim. Law, § 14. But if such an important change has been made in the law as is claimed by the defendant's counsel, it is plain that the defendant could not have been convicted of arson in any of its degrees, as defined in the Penal Code, and his offense, at most, amounts to nothing more than a mere misdemeanor under section 637, for wilfully setting fire to a building under circumstances not amounting to arson in any of its degrees. Bearing in mind the fact that the Penal Code was a revision of pre-existing statutes on the subject of crimes, and that no change in the law can be presumed to have been intended unless clearly expressed, and recalling the condition of the law on the subject of arson in the first degree as it existed prior to the enactment of the Penal Code, it is impossible to believe that any such result was intended in the enactment of section 490. The thought which was in the legislative mind must prevail when it can be ascertained, though apparently contrary to the letter of the statute, and it must be a clear case that would warrant the courts in holding that the legislature intended to reduce the offense of which the defendant was convicted from one of the highest known to the law to a misdemeanor. There is nothing in the nature of the crime, or in the law on the subject, as it has existed for centuries, that would be likely to induce the law-making power to introduce such an element into the definition of arson in the first degree. Neither can it be supposed that the legislature enacted section 490 without some purpose in view, and while we are quite clear that the purpose was not to change the nature of the crime of arson in the first degree, it is not so easy to ascertain just what was intended.

It is safe enough to say, however, that it was enacted from abundant caution, in order to exclude from the operation of the previous sections, in which the different degrees of arson are defined, acts which never constituted the offense, and, possibly, some acts which did. It is quite possible that it was an unnecessary precaution, as the courts would, doubtless, hold that the

three sections referred to contained the whole law on the subject, and that a criminal statute could not be enlarged by construction to include acts not specifically enumerated. It was always the law that to set fire to or burn a house by negligence or mischance or accidentally while in the commission of a mere civil trespass was not arson, 2 Bishop's Crim Law, § 15; but it has been said that if a person set fire to or burn a house while engaged in the commission of a felony it is arson, though there was no intent to set the fire or burn the building. Id. §§ 14, 15. The legislature, no doubt, intended to exclude all such cases from the definition of the offense by the enactment of section 490. It was provided by section 488, defining arson in the third degree, that "a person who wilfully burns or sets fire to * * * a building, structure or other erection, under circumstances not amounting to arson in the first or second degrees, is guilty of arson in the third degree." This was a new definition of the crime, expressed in broad and comprehensive language, which, in the judgment of the legislature, might be construed to include acts which before did not amount to arson, and hence, section 490 was passed as a precaution against such a result. There was no intention to qualify the definition of arson in the first degree, as expressed in the previous section, but to limit and qualify the broad language of the section defining arson in the third degree. It follows that the offense of which the defendant was convicted was sufficiently charged in the indictment, and the refusal of the trial court to charge the jury that an intent to destroy the building was a necessary element of the crime was not error. There is an exception in the case to the decision of the court sustaining a challenge to a juror on the part of the People which it may be proper to notice. This juror had testified that before he would convict a person of arson in the first degree upon circumstantial evidence, it would have to be such as to leave no doubt, whatever, upon his mind; very precise and exact. He explained his meaning further by stating that he did not refer to a reasonable doubt only, but to any doubt whatever.

After some further examination the learned recorder propounded to him the following question: "Suppose the court was further to instruct you that if all the circumstances as they

were developed by the evidence in the case pointed in one direction, beyond a reasonable doubt, and that was toward the guilt of the accused, and if it did it was to be received and treated in the same way as you would that direct evidence, would you do so?" The juror answered: "I don't think I would." Whereupon the court sustained the challenge and the defendant's counsel excepted. It needs no argument to prove that instructions such as are mentioned in the question from court to jury would be improper, but it does not follow that the question can be made the basis of a legal exception, as it was intended to test the extent of the juror's prejudice against circumstantial evidence. It was another way of inquiring whether the juror would convict at all upon circumstantial evidence. The exception was not to the question, but to the decision excluding the juror, and as he had stated before the question was propounded, in substance, that he would hesitate to convict, even where the circumstances were of such a character as to establish guilt beyond a reasonable doubt, there was no error in the result within the recent decisions of this court. People v. McQuade, 110 N. Y. 297; 18 St. Rep. 288; People v. McGonegal, Dec., 1892, 48 St. Rep. 900.

There are some other exceptions in the record, but we think that they have been fully considered in the court below as well as the questions here discussed and correctly disposed of. The record does not disclose any error that entitles the defendant to a new trial.

It follows that the judgment must be affirmed.

All concur.