223 P.2d 808

ROBERTS et al. v. SPRAY et al., Members of Board of Sup'rs of Pinal County, et al.

No. 5325.

Supreme Court of Arizona.
Nov. 6, 1950.

Tom Fulbright, of Florence, Stokes & Scanland, of Coolidge, Ellis & Walker, of Eloy, Allan K. Perry, of Phoenix, for appellants.

Preston F. Sult, Co. Atty., Florence, Reed & Wood, Sp. Counsel, Coolidge, for appellees.

PHELPS, Justice.

Plaintiffs-appellants herein, brought this action under the Declaratory Judgment Act;

A.C.A.1939, § 27-701 et seq., on behalf of themselves and all others similarly situated, against defendants-appellees, members of the board of supervisors of Pinal County, and Fred O. Wilson as Attorney General of the state, seeking to have declared unconstitutional House Bill No. 170 enacted as chapter 27 of the Session Laws of 1949 and known as the "Hospital District Act of 1949."

Appellants allege in their complaint that the Act violates the 14th amendment to the Constitution of the United States and article 2, section 4 of the constitution of the state of Arizona because the provisions thereof are so vague, ambiguous, indefinite and uncertain as to be unintelligible and unenforcible in that it is impossible to determine from the Act

(a) Whether the hospital district may itself operate a hospital or must lease the same to a non-profit corporation;

(b) For what purposes bonds of the hospital district may be issued, and particularly whether such bonds may be issued to provide funds with which to operate a hospital;

(c) For which purposes district taxes may be levied, and particularly whether such taxes may be levied to provide funds with which to operate the hospital;

(d) How the affairs of the hospital district shall be settled in the event of its dissolution, particularly in the liquidation of its debts and in the disposal of the surplus property or proceeds, if any, after payment of such debts;

(e) Who are qualified electors;

(f) Whether or not the hospital district is a tax-levying improvement district within the meaning of article 13, section 7 of the constitution of Arizona.

Appellants further allege that said Act violates sections 3 and 9 of article 9 of the constitution of Arizona in that said Act does not distinctly state the tax imposed nor the object for which said tax shall be applied. Appellees filed a motion to dismiss the complaint upon the ground that it fails to state a claim upon which relief can be granted. The court thereafter granted the motion to dismiss and entered its judgment that appellants "take nothing by reason of their complaint." From this judgment an appeal was taken to this court and the following assignments of error are presented for our consideration:

1. The superior court erred in dismissing the complaint, because it raised a question which should have been decided for the guidance of the board of supervisors of Pinal County and the action should therefore have been determined upon its merits.

2. The superior court erred in dismissing the complaint because it affirmatively appears therefrom that the "Hospital District Act of 1949" is so indefinite, uncertain and ambiguous that it is incapable of being intelligently administered and is, therefore, unconstitutional.

3. The superior court erred in dismissing the complaint because it affirmatively appears therefrom that the statute, the validity of which is here challenged, is in contravention of and repugnant to section 2 article 7 of the Arizona Constitution.

We fail to perceive any merit whatever to appellants' first assignment of error. The question of whether the Hospital District Act of 1949 violated either the 14th amendment to the constitution of the United States and section 4, article 2 or sections 3 and 9 of article 9 of the Arizona Constitution for any of the reasons alleged in the complaint was squarely presented to the trial court on the motion to dismiss. The Act was made a part of the complaint. The motion to dismiss raised the sufficiency of the complaint and the whole thereof to state a claim, admitting for the purposes of the motion the truth of the facts alleged therein. If the trial court had found the Act violated either one of the provisions of the state constitution as alleged in the complaint or the 14th amendment of the constitution of the United States it would have been the mandatory duty of the trial court to deny the motion to dismiss. Before it could lawfully enter its order to dismiss the complaint upon the ground that it failed to state a claim it had to find as a matter of law, and as a condition precedent, that the Act violated neither of the provisions of the state or Federal Constitution alleged in the complaint but that on the other hand it was in all respects thereto constitutional. By granting appellees' motion to dismiss, it in effect said the Act is neither so vague, ambiguous, indefinite or uncertain in any of the particulars alleged in the complaint as to be unenforcible nor does it in any manner run counter to the provisions of sections 3 and 9 of article 9 of the state constitution.

In the absence of findings of fact or conclusions of law the supreme court must presume that the conclusions on every necessary issue supported the judgment. Morgan v. Krook, 36 Ariz. 133, 283 P. 287.

Assignment No. 2 raises the question of whether or not the Act is sufficiently definite, certain and clear to be capable of intelligent administration. Counsel for appellants upon further study of the Act after filing their complaint have now reached the conclusion that the particulars hereinabove set forth haec verba under the designations (a), (b), (c), (d) and (f) in which it is alleged the Act is so indefinite, uncertain and ambiguous as to be unintelligible and unenforcible, should not have been incorporated in the complaint for the reason that they now believe the portions of the Act to which they were directed are sufficiently definite and certain to be capable of intelligent administration. They still assert, however, that the Act is indefinite, uncertain and ambiguous as to who are qualified electors and in assignment 3 they have raised here for the first time the point that the Act is in contravention of section 2, article 7 of the Arizona Constitution which pre-

scribes the qualifications of voters upon any question which may be submitted to a vote of the people.

There is no doubt in our minds that under former decisions of this court such a question may be raised here although it was not raised or suggested in the trial court. Our opinion in the case of Town of South Tucson v. Board of Supervisors of Pima County, 52 Ariz. 575, 84 P.2d 581, fully supports this view, citing cases.

For reasons of brevity and clarity we believe it best to discuss the questions raised by assignments 2 and 3 together. Before doing this, however, even though appellants abandon their position as set forth in subdivisions (a), (b), (c), (d) and (f) of their complaint, upon suggestion of appellees, we will advert to them briefly in order that those who may be charged with the administration of the Act may entertain no doubt as to its meaning. We will take them up seriatim.

*(a) Query: May the board of directors of the district operate the hospital itself or must it lease it to others?*

Section 8(e)1 of the Act so clearly states what the board shall do in regard to the operation of the hospital that it is not even subject to judicial construction. Industrial Commission v. Price, 37 Ariz. 245, 292 P. 1099. In clear unambiguous language section 8(e)1 states that: "The board of directors shall lease the hospital and its equipment for such term or period as it shall deem reasonable but not less than five (5) nor more than ten (10) years to a corporation not for pecuniary profit, duly organized under the laws of the state of Arizona for the purpose of conducting a hospital; provided that the rental to be received upon such lease shall be upon such terms as will provide a fair return to the district on its investment and shall be sufficient to meet the payments of principal and interest of any bonds issued under the terms of this Act, and such amounts as may be necessary to meet the expenses of the district. * * *"

Nothing remains to be done but to enforce the law as written.

According to the record the bill as originally presented to the legislature provided for the establishment, maintenance and operation of one or more hospitals situated within the limits of the District. This was deleted from the bill by the legislature and the board of directors was authorized only to lease such hospital and its facilities. This fact is a proper consideration in determining the legislative intent where the meaning of the language used is obscure. The board of directors has only such powers as are expressly or by necessary implication granted to it by the provisions of the Act.

*(b) May bonds be issued to provide funds for the operation of the hospital?*

The answer is that if a board has no authority to operate the hospital it inevitably follows that bonds may not issue for its operation. Under the provisions of section 10 of the Act bonds may be issued by the

district for the purpose of carrying out any of the provisions of the Act. The board having no authority under its provisions to operate the hospital, bonds may not be issued therefor.

*(c) For what purpose may taxes be levied and particularly may they be levied for the purpose of operating the hospital?*

█ Again we state that if the board may not operate the hospital it follows that taxes may not be levied for its operation. As stated in the brief of counsel for appellees the Act creating the hospital district provides how and for what purpose taxes may be levied, specifically limiting the amount of the levy to take care of items set up in the budget presented by the board of directors of the district to the board of supervisors. The levy is therein limited to a tax "sufficient in amount together with other funds on hand or accruing during the ensuing fiscal year, exclusive of reservations, to meet the obligations of the district."

*(d) How shall the affairs of the hospital district be settled in event of dissolution especially with reference to liquidation of its debts?*

█ In answer to this question we point out that the maxim "ubi jus ibi remedium" applies. The legislature may prescribe the procedure for the enforcement of a liability but in the absence of such a procedure equity can and will find a way for its enforcement. 11 Am.Jur., Constitutional Law, section 75, page 692. Therefore the courts of the state in the exercise of their equity jurisdiction are clothed with ample authority to protect holders of bonds which may be outstanding or any other legitimate indebtedness against the district and do full justice in the matter without specific directions from the legislature. Section 16 of the Act provides for an election to determine whether or not the district shall be dissolved. This gives to all interested persons an opportunity to express their will on the vital issue of whether the district shall continue to exist or not and fully protects their interests. We hold that section 16 of the Act is sufficiently definite to accomplish the end therein sought.

█ We believe no useful purpose will be served by discussing the question of whether or not the hospital district created by the Act falls within the provisions of section 7, article 13 of the state constitution. This section of the constitution neither creates nor authorizes the creation of a tax-levying improvement district. The legislature needs no constitutional authority to create such a district. Its power to enact such legislation is an attribute of sovereignty which resides in the people of the state. We have been referred to no provision in the constitution and we find none which restricts the legislature in the enactment of such a law or with which it is in conflict. Therefore we hold that the legislature had plenary authority to authorize the creation of the district and to vest it with the powers therein granted.

We will now consider the question of who are electors and whether the Act con-

travenes the provisions of sections 2 and 13 of article 7 of the Arizona Constitution. In order to get a clear picture of the question presented we will set out the constitutional provisions and pertinent portions of the Act here involved. Section 2 of article 7 provides:

"§ 2. (Qualifications of voters.)—No person shall be entitled to vote at any general election, or for any office that now is, or hereafter may be, elective by the people, or upon any question which may be submitted to a vote of the people, unless such person be a citizen of the United States of the age of twenty-one years or over, and shall have resided in the state one year immediately preceding such election. The word 'citizen' shall include persons of the male and female sex.

"The rights of citizens of the United States to vote and hold office shall not be denied or abridged by the state, or any political division or municipality thereof, on account of sex, and the right to register, to vote and to hold office under any law now in effect, or which may hereafter be enacted, is hereby extended to, and conferred upon males and females alike.

"No person under guardianship, non compos mentis, or insane, shall be qualified to vote at any election, nor shall any person convicted of treason or felony, be qualified to vote at any election unless restored to civil rights.

\*　　\*　　\*　　\*　　\*　　\*

"§ 13. (Voters on bond issues.)—Questions upon bond issues or special assessments shall be submitted to the vote of real property taxpayers, who shall also in all respects be qualified electors of this state, and of the political subdivision thereof affected by such question."

The following quotations from appellants' brief state in substance the material portions of the Act here in question relating to qualifications for voters or electors in the district.

"Section 3: Petition proposing district: '\* \* \* signed by 10% of the *electors* residing within the area of the proposed district \* \* \*'

"Section 5: *Election to determine organization: 'Any resident real-property owner in the district shall be entitled to vote at such election.'*

"Section 7: Board of Directors: 'Directors of the district to be composed of \* \* \* five citizens, resident *real property taxpayers* within said district;' Directors may be nominated by 'fifty or more *persons possessing the qualifications required of those eligible to vote in the election as provided in said Section 5.'*

"Section 10: Bonds: '\* \* \* submit to a vote of the *real property taxpaying electors* residing in the district such question in the manner as provided by law in Chapter 10, Article 6, Arizona Code 1939.'

"Section 16: Dissolution of Districts: Can be dissolved by majority vote of '\* \*

*all real property taxpaying electors* voting on the question of dissolution at a special election called to vote on the question. 'To be called by the Board of Supervisors on application of Board of Directors or upon filing of petition signed ' * * * by 25% of the electors residing within the District.' "

It is a cardinal rule of statutory construction that every intendment is in favor of the constitutionality of legislation, State Tax Commission v. Shattuck, 44 Ariz. 379, 38 P.2d 631, and unless its invalidity is established beyond a reasonable doubt it will be declared constitutional. Black & White Taxicab Co. v. Standard Oil Co., 25 Ariz. 381, 218 P. 139; Green v. Frazier, 253 U.S. 233, 40 S.Ct 499, 64 L.Ed. 878.

State constitutions are a limitation upon the power of sovereignty and in the absence of an expressed or inferential prohibition by the provisions of the constitution of the United States or of the state of Arizona the legislature of this state may in the exercise of the sovereign powers of the state, enact any law its discretion may dictate. Questions as to the wisdom of the law, as to its expediency or concerning the soundness of policy outlined therein must be addressed to the legislature. State ex rel. Davis v. Osborne, 14 Ariz. 185, 125 P. 884; Clark v. Boyce, 20 Ariz. 544, 185 P. 136; Gherna v. State, 16 Ariz. 344, 146 P. 494; American Federation of Labor v. American Sash & Door Co., 67 Ariz. 20, 189 P.2d 912.

Sections 2 and 13, article 7, of the state constitution are self-executing and require no legislation to make them operative. Morgan v. Board of Supervisors, 67 Ariz. 133, 192 P.2d 236. The fact that a constitutional provision is self-executing does not necessarily exhaust legislative power on the subject but such legislation must be in harmony with the spirit of the constitution. The sum and substance of the various provisions in the Act relating to qualifications of electors to vote in district elections is that—any resident real property owner in the district shall be entitled to vote at such election provided he is also a real property taxpayer therein. The other provisions thereof using the words "electors," "real property taxpayers", "real property taxpaying electors", "electors residing [with]in the district" are all encompassed in the above requirement. These provisions merely add to the requirements of section 2, article 7, that the voter must be a resident real property owner in the district to be able to vote. It adds to section 13 of article 7 the requirement that the real property owned by the taxpayer must be in the district affected to enable such real property taxpayer to vote. These requirements are in complete harmony with sections 2 and 13 of article 7, supra. If the sections of the constitution defining the qualifications of voters is self-executing, it was not necessary for the legislature to incorporate the contents thereof in the Act in question. It is only by treating the language used relating to qualifications of voters as an attempt to reduce the standards fixed by the constitution for the exercise of the elective fran-

chise that we would be justified in holding the Act unconstitutional. If it is treated as adding further requirements for qualifications to vote in a district election such as requiring the elector to be a real property owner or taxpayer within the district it was clearly within the legislative power and creates no conflict at all with the constitution.

It is our duty to reconcile the language of the Act with the provisions of the constitution if possible. Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854. And if two interpretations may be given to the language of the Act, one resulting in its invalidity and the other in its validity it is the duty of the court to adopt the interpretation favoring its validity. Smallwood v. Jeter, 42 Idaho 169, 244 P. 149; 11 Am.Jur., Constitutional Law, section 97. The legislature in enacting the Hospital District Act of 1949 is presumed to have known of and had in mind at the time of its enactment the constitutional provisions above set out relating to the qualifications of voters and that such provisions were self-executing and certainly we may presume that it had no intention of enacting legislation in conflict therewith. Such a presumption is a necessary corollary to the presumption that a statute is constitutional. In McCullough v. Commonwealth of Virginia, 172 U.S. 102, 19 S.Ct. 134, 138, 43 L.Ed. 382, the court speaking through Mr. Justice Brewer said: "* * * It is elementary law that every statute is to be read in the light of the constitution. However broad and general its language, it cannot be interpreted as extending beyond those matters which it was within the constitutional power of the legislature to reach. It is the same rule which obtains in the interpretation of any private contract between individuals. That, whatever may be its words, it is always to be construed in the light of the statute, of the law then in force, * * *." and in the case of Cooper Manufacturing Co. v. Ferguson, 113 U.S. 727, 5 S.Ct. 739, 741, 28 L.Ed. 1137, the court said: "* * * As the clause in the constitution and the act of the legislature relate to the same subject, like statutes in pari materia, they are to be construed together. * * *" See also Cincinnati, N. O. & T. P. Ry. v. Kentucky, 115 U.S. 321, 6 S.Ct. 57, 29 L.Ed. 414. Had the provisions of the constitution relating to the qualification of voters been incorporated into the Act nothing would have been added to its efficacy. Self-executing provisions of the constitution are in all respects upon an equal footing with acts of the legislature in so far as their administrative effect is concerned. Each are entitled to enforcement according to their respective terms. While the legislature has no authority to enact legislation which would in any manner conflict with such constitutional provision, the two laws possess equal dignity from the standpoint of enforcement. Neither requires more nor less evidence than the other to establish a right under their respective terms or to sustain a violation thereof.

We therefore hold that the provisions of the constitution and the provisions of the Act relating to the qualifications of voters in the hospital district must be construed together and that the provisions thereof not only are not in conflict with each other but are in complete harmony as above pointed out. It follows therefore that in order to be qualified to vote in the hospital district a person must not only be a resident real property owner and taxpayer within the district but he or she must in all particulars qualify under the provisions of sections 2 and 13 of article 7 of the state constitution. We further hold that the provisions of sections 3 and 9 of article 9 of the Arizona Constitution are fully met by the provisions of the Act relating to the object to which the tax shall be applied.

Judgment affirmed.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concur.