LEACH, Appellant, vs. LEACH, Respondent.

*March 6—April 8, 1952.*

For the appellant there were briefs by *Rieser, Mathys, McNamara & Stafford* of Madison, and oral argument by *Clifford G. Mathys.*

For the respondent there was a brief by *Dougherty, Ryan, Moss & Wickhem* of Janesville, and oral argument by *Stanley M. Ryan* and *Howard H. Moss.*

CURRIE, J. The $2,000 of attorneys' fees which the judgment required the plaintiff husband to pay to the attorneys of the defendant wife was two thirds of their total bill for services rendered by them to the wife in the action. There is no claim made that the amount charged was excessive. Inasmuch as the husband instituted the action for the di-

vorce, much of the services rendered by counsel for the wife were necessary in defending the action. It was therefore a matter within the sound discretion of the trial court to require the husband to pay the amount of attorneys' fees and disbursements of counsel for the wife which the judgment required that he should pay, and such determination should not be overturned by this court in the absence of any showing of abuse of discretion.

This leaves as the remaining question, and the one to which most of the briefs of counsel are devoted, that of whether the trial court had discretion to require the husband to pay money for the support and maintenance of a wife who leaves the home of her husband and establishes a separate home for herself where there is neither a showing nor a finding by the court that she did so for just cause attributable to the husband, and she has an independent income of her own ample for her own support and maintenance.

The trial of the action was held in September, 1949, and on March 11, 1950, the trial court rendered a memorandum decision in which it was stated that a divorce would be denied to both parties and the reasons therefor appear in the statement of facts preceding this opinion. This decision further stated that the court would postpone making a determination as to an allowance to be granted the wife for support and maintenance pursuant to sec. 247.28, Stats., so as to give the parties an opportunity to see if a satisfactory arrangement could be reached by agreement. No agreement having been reached on this point by the parties, the trial court on May 18, 1951, rendered a supplemental ruling announcing his decision to require Mr. Leach to pay $300 per month toward the support of Mrs. Leach. In this supplemental decision the trial court stated:

"After hearing the proof of the parties upon the complaint of the plaintiff and the counterclaim of the defendant, it was

determined that neither of the parties had shown a cause of action for a divorce. Accordingly, a divorce was denied.

*"Under such circumstances it becomes the court's duty to fix an amount to be paid by the husband for his wife's support.* (Sec. 247.28.)"

Thereafter, under date of July 16, 1951, formal findings of fact, conclusions of law, and judgment were entered requiring the payment of the $300 per month support money. The findings of fact found that Mrs. Leach "vacated the home of the parties hereto on August 14, 1947," but contained no finding that the same was for cause. Findings X an XI provided as follows:

"X. That the defendant comes from a family of very comfortable circumstances and her opportunities for travel, social activities, and entertainment have been far above the average which prevails in this community; that she is the recipient of an independent income from certain trust funds established for her by her father, from which she derives an income of approximately $7,500 a year.

"XI. That the plaintiff has ample means to provide for his family and should be required to give financial recognition to the responsibility that is his and which arises because of the marriage relationship which has existed for many years."

It is apparent from the quoted portions of the supplemental decision of May 18, 1951, that the trial court concluded that sec. 247.28, Stats., made it mandatory, in a case where a divorce is denied to both parties, that the court fix an amount to be paid by the husband for the wife's support. Sec. 247.28 provides:

*"Support and maintenance of wife and children.* In a judgment in an action for a divorce, although such divorce be denied, the court may make such order for the support and maintenance of the wife and children, or any of them, by the husband or out of his property as the nature of the case may render suitable and proper."

An analysis of this statute discloses that the court in a divorce action in which a divorce is denied *"may"* make an order for support of the wife, not that it *must* make such an order. Further than that, the right to make the order (as well as the amount to be ordered paid, if any), is qualified by the words *"as the nature of the case may render suitable and proper."*

Is a voluntary leaving of the family home by the wife without just cause such conduct as not to authorize the trial court to enter an order for support money because "the nature of the case" does not "render" the same "suitable and proper" under the wording of the statute? In order to reach a correct conclusion as to this it will be necessary to examine the applicable authorities.

Some of the decisions hereinafter cited make no reference to sec. 247.28, Stats., or cover fact situations in which this statute would have no direct application. We consider this immaterial because it is our opinion that the statute is procedural in nature and the phrase *"as the nature of the case may render suitable and proper"* is to be interpreted in the light of the common law as declared in the decisions of this court passing on the question of the right of a wife, who has abandoned the marital home, to compel her husband to support her.

Mr. Chief Justice Dixon in his opinion in *Meek v. Pierce* (1865), 19 Wis. *300, *303, correctly stated the principle of statutory construction, which we believe should be followed in construing sec. 247.28, Stats., as follows:

"It is a safe and established principle in the construction of statutes, that the rules of the common law are not to be changed by doubtful implication. To give such effect to the statute, the language must be clear, unambiguous, and peremptory. Sedgwick on Stat. & Const. Law, 318. Were we to hold the common-law rule changed, it would only be by implication, and as we think, very doubtful. The language

employed is not inconsistent with the idea that the rule of the common law is still to prevail."

This same rule is stated in 3 Sutherland, Statutory Construction (3d ed.), p. 16, sec. 5305, as follows:

"There is a presumption that a statute is consistent with the common law, and so a statute creating a new remedy or method of enforcing a right which existed before is regarded as cumulative rather than exclusive of the previous remedies."

Crawford, Statutory Construction, p. 422, sec. 228, states:

"If a statute is ambiguous or its meaning uncertain, it should be construed in connection with the common law in force when the statute was enacted. This is the rule whether the statute is simply declaratory of the common law, or whether it abrogates, modifies, or alters it in any way. And there is a presumption that the lawmakers did not intend to abrogate or alter it in any manner, although where the intention to alter or repeal is clearly expressed, it must be given effect by the courts. Even where this intention appears, there is a further presumption that the lawmakers did not intend to alter the common law beyond the scope clearly expressed, or fairly implied."

The decision of this court in *Gray v. Gray* (1939), 232 Wis. 400, 287 N. W. 708, is indicative of the weight accorded the early decisions of our court on the point at issue because the court therein cites among others, the earlier cases of *Gleason v. Gleason* (1855), 4 Wis. *64, and *Friend v. Friend* (1886), 65 Wis. 412, 27 N. W. 34, as authorities on the question of a wife unreasonably refusing to live in a home selected by the husband.

In *Gray v. Gray, supra,* the defendant husband was granted a divorce on his counterclaim for wilful desertion by the plaintiff wife, and the question arose as to whether the wife was entitled to alimony. We quote the following significant passages from the court's decision in that case (pp. 405, 409):

"In the case of *Gleason v. Gleason,* 4 Wis. *64, the rule was laid down that the husband has the right to select the place where the family shall reside, and that if the wife unreasonably refuses to remove with him to the place he selects, her conduct constitutes wilful desertion under the divorce statute, sec. 247.07 (4). Such has remained the rule in this state ever since. Such has been referred to or stated as the rule in two cases involving homestead rights, *Godfrey v. Thornton,* 46 Wis. 677, 683, 1 N. W. 362, and *Beranek v. Beranek,* 113 Wis. 272, 277, 89 N. W. 146, and in two involving divorces, *Friend v. Friend,* 65 Wis. 412, 27 N. W. 34, and *Schopps v. Schopps,* 188 Wis. 151, 159, 205 N. W. 829. From the *Gleason* and *Schopps Cases* cited it appears that to warrant a judgment for wilful desertion on this ground it must appear that the refusal of the wife is unreasonable. . . .

". . . It would seem anomalous that while the wife, who has deserted her husband, has no claim upon him for support while the marriage status remains unchanged, yet may have claim upon him after that status has been destroyed by the granting to him of an absolute divorce because of her desertion."

We recognize that law, if it is to keep pace with social developments and progress, cannot remain static, and precedents consisting of decisions of this court rendered in the latter half of the nineteenth century sometimes are outmoded and should not be blindly followed. Nevertheless, we find upon examining the earlier decisions of the court in the light of our more recent decisions, on the question of the right of a wife, who abandons the family home without just cause, to compel her husband to support her while living apart from such home, that such earlier decisions are just as authoritative today as they were when rendered. This must be interpreted as meaning that this court believes the public policy underlying the earlier decisions remains sound public policy today.

In *Friend v. Friend, supra,* cited in our decision in *Gray v. Gray, supra,* the wife had brought suit for divorce on the

ground of cruel and inhuman treatment, claiming that in July of 1883 she was compelled because of his treatment to leave him, and had not lived with him since. The defendant denied this in his answer, and after a hearing, judgment was entered dismissing the complaint. Thereafter the wife continued to live by herself and five months after the entry of the judgment referred to she commenced another action for divorce on the ground that he had refused to provide for her support. In the earlier action it had been determined that she had no adequate cause for deserting him on the ground of cruelty. The court in its decision, said (p. 414):

"Her desertion of his bed and board was wilful, not rendered necessary for her safety, and must be deemed to be without legal excuse or justification. It is clearly the duty of the husband to support his wife, to provide her a home and the comforts of life, to the extent of his ability. It is equally her duty to live with her husband, and observe all her marriage vows; but if, without legal justification or excuse, she abandons his home, and seeks one elsewhere, she forfeits her rights to his support.

"Now, it does not appear from the second complaint that the appellant has ever offered to return to her husband's home and discharge her duties as a wife. We infer she takes the ground that he is under obligation to support her while she persists in living apart from him. It seems to us she sadly misconceives her duty and his obligation. When she returns to his home, or offers to return and discharge her conjugal duties, she will be in a position to invoke the law to compel him to perform his duties if he refuses to do so."

In *Lucas v. Lucas* (1947), 251 Wis. 129, 133, 28 N. W. (2d) 337, this court said:

"It has long been recognized that the wife may acquire a separate domicile from that of her husband *if his misconduct has given her adequate cause for divorce.*" (Emphasis supplied.)

While counsel for Mrs. Leach cite a number of decisions of this court in their brief in an attempt to sustain the award

for support money made to her by the trial court, it is significant that in none of those cases did it appear that the wife on her own initiative and without legal cause had abandoned the home of a husband who at all times had been willing to support her in his home, and who had never given her legal cause to leave. Thus in the cases cited by counsel, it will be noted that in *Voss v. Voss* (1914), 157 Wis. 430, 147 N. W. 634, the court characterized the husband's conduct as "grossly immoral and unjustifiable." In *White v. White* (1918), 167 Wis. 615, 168 N. W. 704, the husband was "guilty of adultery." In *Penn v. Penn* (1918), 168 Wis. 267, 169 N. W. 558, the condition of the household was "provoked largely by the fault and the misconduct of the defendant." In *Szumski v. Szumski* (1937), 223 Wis. 500, 270 N. W. 926, it was found that the conduct of the husband was "inconsistent with the conduct of a faithful husband toward his wife" and that "he does not come into court with clean hands."

The failure of the trial court to find that Mrs. Leach abandoned the family home for just cause, together with the statement of the trial court in his decision that the evidence offered as to cruel and inhuman treatment on the part of both parties "abounds in proof of trivialities" and "these annoyances could be called cruelties only with exaggeration," negative any claim that the evidence would support a finding that she left for just cause. Neither is there any finding that ill-health on the part of the wife necessitated or justified her leaving the family home. Mrs. Leach testified that she was not confined to her bed any time during the year preceding her leaving and that she spent most of her evenings away from home playing cards with relatives and friends. The statement of this court in *Gray v. Gray, supra,* is particularly pertinent on this point (p. 406) :

"And while there is evidence of the plaintiff's ill-health, it does not appear that the conduct of the defendant caused

it, or rendered it probable that by continuing to live with him it would so affect her health as to make such continuance dangerous, one of which is essential to constitute cause for divorce for cruelty not based on personal violence."

Inasmuch as Mrs. Leach left the family home without just cause, it was an abuse of discretion of the trial court to award support money to her, because such award was contrary to the principles applicable to such a situation as announced in the prior decisions of this court hereinbefore reviewed at considerable length.

In view of reaching this conclusion, it becomes unnecessary to determine the question of whether, if the leaving had been for just cause, the large independent income of Mrs. Leach would be adequate grounds for denying an award of support money.

*By the Court.*—Cause remanded with directions to strike from the judgment the provision requiring plaintiff to pay support money for the account of the defendant in conformity with this opinion, and, as so modified, judgment is affirmed. The appellant shall be entitled to tax costs on this appeal.