294 P.2d 661

William S. PORTER and Standard Accident Insurance Company, Inc., a corporation, Appellants,

v.

V. S. EYER and Alice Eyer, husband and wife, d/b/a Coolidge Sand and Rock Company, Appellees.

No. 5999.

Supreme Court of Arizona.

Feb. 21, 1956.

Rehearing Denied March 20, 1956.

Eugene K. Mangum, Casa Grande, for appellants.

Chas. W. Stokes, Coolidge, for appellees.

UDALL, Justice.

The question is here presented whether a suit may be maintained by one who furnishes materials to a sub-contractor, against the prime contractor and his surety where there was no direct contractual relationship between said parties and neither the original contract with the owner nor the performance bond itself expressly provide for the maintenance of such a suit.

The undisputed facts are these: on January 27, 1953, defendant-appellant William S. Porter, a licensed contractor, agreed in writing with O. S. Stapley Company, a corporation, for a consideration of $39,100, to build a shop and display building in Coolidge, Arizona. The contract provided that Porter, the prime contractor, would "* * * furnish all labor, materials * * * for the satisfactory completion * * *", etc., and that he "agrees to execute a performance bond in the amount of $39,100." The next day a bond in this latter amount was furnished with the O. S. Stapley Company named as obligee, signed by Porter as principal and Standard Accident Insurance Company, a corporation (defendant-appellant), as surety. This bond incorporates the contract by reference and contains the usual provision guaranteeing full performance of the contract and

that there will be no failure or default on the part of the principal. Apparently defendant Porter thereafter subcontracted with the Riggs Construction Company to furnish certain materials for said building. The latter company in turn made arrangements with the plaintiffs-appellees, V. S. Eyer, et ux, d.b.a. Coolidge Sand and Rock Company, to supply them with mixed concrete, sand and gravel for this Stapley job. The total amount of Eyer's invoices was $4,827.63. Riggs, before becoming insolvent and taking bankruptcy, made a payment thereon of $2,500, leaving a balance due of $2,327.63. It is not contended that any of such materials were not used in the construction of the Stapley building or that plaintiffs have been fully paid therefor.

Plaintiffs filed no materialman's lien but on October 29, 1953 elected to sue both defendants on said completion bond for the balance claimed due them for materials supplied for said building. Admittedly this bond was given pursuant to the provisions of Chapter 43, S.L. of 1952, adding Section 67–2318a, A.C.A.1939, 1952 Cumulative Supplement. Defendants jointly filed a motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted. This motion was denied and thereafter a joint answer was filed, denying any indebtedness to plaintiffs and affirmatively asserting that there was no contractual relationship between plaintiffs and defendants, and that the bond sued upon "does not run to or for the benefit of plaintiffs". The case was tried to the court sitting without a jury, whereupon judgment was entered for plaintiffs as prayed for, with interest and costs. Motion for new trial was made and later denied by operation of law. This appeal followed.

A point most strenuously urged for reversal—and the only affirmative defense raised by their answer—is that there is no privity of contract between plaintiffs and defendant Porter. Furthermore, as to the defendant surety, they contend the rule of strictissimi juris applies. The following proposition of law is advanced:

"A bond furnished by one party to a second party cannot be made to run to the benefit of a third party, where such third party is in no wise mentioned or provided for in the said bond."

Were we limited in our consideration to the contract and bond sued upon this would perhaps be true, because nowhere therein is it spelled out that materialmen are covered by the bond. Generally speaking, in order that a suit be maintainable on a contractor's bond by or for the use of a materialman the bond must be construed so as to include the materialman within its coverage, i. e., to give him some beneficial interest therein. Hence in the instant case if the judgment entered is to be sustained it must be because the following statute, which was then in force and effect, brought plaintiff within the coverage of the bond. The pertinent part thereof reads as follows:

"67–2318a. Completion bond.—A contractor licensed under the provi-

sions of this article shall, on every contract undertaken by him pursuant to the authority of his license and prior to the commencement of work thereon, furnish to the owner or other contracting party:

"1. A surety bond in the amount of the contract, conditioned upon completion of the contract according to its terms and *payment of all subcontract labor, and material supplier charges.*" Ch. 43, 1952 Session Laws, Arizona, supra. (Emphasis supplied.)

■ The law is well settled that if a surety makes a contract with the law before him the law enters into and becomes a part of the agreement.

"[Sec. 40(e).] Law as Part of Bond. The law at the time of the execution of a statutory bond is a part of it; if it gives to the bond a certain legal effect, it is as much a part of the bond as if in terms incorporated therein. Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. Such a bond must be given the effect which in reason must

have been intended by the statute. Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it * * *." 11 C.J.S., Bonds, p. 420. Southern Surety Co. v. County of Cochise, 27 Ariz. 473, 476, 233 P. 897. See also cases cited in: Annotation—Contractor's Bond—Laborers or Materialmen, 77 A.L.R. 21, particularly Sub. III(d) thereof; supplemented in 118 A.L.R. 57. Cf. Ward v. Johnson, 72 Ariz. 213, 232 P.2d 960; American Federation of Labor v. American Sash & Door Co., 67 Ariz. 20, 39, 189 P.2d 912; Baumann v. City of West Allis, 187 Wis. 506, 204 N.W. 907, 914.

To avoid the impact of this legal principle, i. e., that the terms of a valid statute are read into a bond, the defendants in three inartfully drawn assignments of error are now contending that Section 67–2318a, supra,

"* * * is unconstitutional and void and violative of the Constitution of the United States of America and the Constitution of the State of Arizona."

The plaintiffs challenge the sufficiency of these assignments asserting that each of them fall far short of complying with our rules in that none of them, inter alia, specify with particularity what section or sections of the federal or state constitution are violated, hence the court would be compelled

to seek out the particular provision the defendant had in mind.

■ We deem is unnecessary to pass upon the sufficiency of these assignments as there appears to be another valid reason why the defendants are not entitled to have the constitutional question determined on this appeal. There is nothing in the record before us to indicate that such an issue was presented to the trial court, hence it is manifestly unfair to now claim error as to a ruling by the trial court on a proposition of law that was never passed upon by it. Unquestionably the general rule is that constitutional questions must first be presented to the trial court for determination. See Washington Nat. Ins. Co. v. Employment Security Commission, 61 Ariz. 112, 116, 144 P.2d 688; 4 C.J.S., Appeal and Error, § 234. We have recognized that one of the exceptions to this general rule, warranting a departure therefrom, is where the matter is one of public policy or of broad, general statewide concern. See, Town of South Tucson v. Board of Sup'rs, 52 Ariz. 575, 84 P.2d 581, 584; Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808. In the instant case the statute in question was repealed by the enactment of Chapter 81, Session Laws of Arizona 1955, thus it can hardly be claimed that the constitutionality of this section is *now* a matter of general concern. For the reasons above stated, we decline to determine the constitutional question on this appeal.

■ With the statute in question read into the bond and by reason of the terms thereof, we are convinced the bond herein inures to the benefit of the plaintiffs. Implicit in the statute is the requirement that the surety bond, given in the amount of the contract, shall be conditioned upon two things; namely, completion of the contract "and payment of all subcontract labor, and material supplier charges". We believe the obvious intent of the legislature in enacting the statute was two-fold: (1) to insure to the owner or other contracting party that the construction job will be completed, and (2) to secure to suppliers of subcontract labor and materials used therein that they will be paid. Incorporation of the statute into the bond does no violence to the intent of the parties since it is admitted by defendants' answer that the bond was executed *pursuant to* the above statute. Thus we may presume that the intention of the parties was to execute such a bond as the law required. We must construe the bond as if in addition to performance of the contract it also was conditioned upon " * * * payment of all subcontract labor, and material supplier charges." If it is thus conditioned, and if certain of these "charges" have not been paid, then the persons entitled to payment certainly are third party beneficiaries under the bond. We hold that plaintiffs are "material suppliers" within the terms of the statute, and hence had the right to sue on said bond for the balance of "charges"

due them. Cf. Webb v. Crane Co., 52 Ariz. 299, 80 P.2d 698.

Judgment affirmed.

LA PRADE, C. J., and WINDES and PHELPS, JJ., concur.

STRUCKMEYER, J. (dissenting).

I am in accord with the decision that the statute at the time of the execution of a statutory bond is a part of it and must be considered as incorporated therein. I cannot agree with the construction of the statute by the majority because I do not believe that it was designed to benefit laborers and material suppliers. The issue here being considered was initially raised in the defendants' answer: "* * * the bond referred to in plaintiffs' complaint does not run to or for the benefit of plaintiffs." Since the terms of the statute are incorporated in the bond, the question then becomes whether the statute was designed to benefit the plaintiffs. The majority opinion disposes of this issue by the statement that "the obvious intent of the legislature" is "to secure to suppliers of subcontract labor and materials used therein that they will be paid." This assumption is supported by neither reason or principles of law nor authority or precedent. The casual disposition of the issue in this manner violates basic principles of statutory construction which, were they not ignored, would lead to a contrary conclusion.

I am of the opinion that the language used in Section 67–2318a is clear and unambiguous. There is no occasion to supply by assumption a legislative intent contrary to the plain, explicit language used.

"* * * the courts shall assume that where a statute, capable of being executed, has been enacted by the legislature in plain and explicit language, the legislature means what it has said. (Citing cases.)" Gustafson v. Rajkovich, 76 Ariz. 280, 285, 263 P.2d 540, 543, 40 A.L.R.2d 520.

"Nothing is more firmly settled than under ordinary circumstances, where there is involved no ambiguity or absurdity, a statutory or constitutional provision requires no interpretation. Automatic Registering Mach. Co. v. Pima County, 36 Ariz. 367, 285 P. 1034; Board of Supervisors of Maricopa County v. Pratt, 47 Ariz. 536, 57 P.2d 1220; Industrial Commission of Arizona v. Price, 37 Ariz. 245, 292 P. 1099; Palmcroft Development Co. v. City of Phoenix, 46 Ariz. 200, 49 P.2d 626, 103 A.L.R. 802, modified 46 Ariz. 400, 51 P.2d 921, 103 A.L.R. 811. We are not aware of any absurdity or inconsistency that will arise by construing this constitutional provision to mean what it says." Adams v. Bolin, 74 Ariz. 269, 273, 274, 247 P.2d 617, 620, 33 A.L.R.2d 1102.

The most cursory inspection of Section 67–2318a indicates by its language [1] that

---

1. "67–2318a. Completion bond.—A contractor licensed under the provisions of

this article shall, on every contract undertaken by him pursuant to the authority

a contractor is required to furnish to an owner or other contracting party [2] a surety bond. It does not require a contractor to furnish a bond to any person other than the owner. Nor is there express language that the bond shall be for the benefit of any person other than the owner. Were it possible to say that there is an implication to the contrary, it would be completely negatived by the express provisions that the owner may waive the bond and in the case of the speculative builder it may be waived by the purchaser. A statute so clearly designed for the protection of the owner should be given that construction and not enlarged by judicial legislation to include an assumed intent inconsistent therewith.

It is my opinion that the language used is plain and explicit but if it be assumed that the statute is ambiguous as to the persons to be benefited, then this court should bring to its aid in interpreting the statute those universally recognized principles by which the true intent of the legislature is to be determined. The most important principle of statutory construction is the determination of the legislative intent if possible. Valley National Bank of Phoenix v. Apache County, 57 Ariz. 459, 470, 114 P. 2d 883. What the legislative intent is can hardly be established by the unsupported statement that it is "the obvious intent of the legislature".

In arriving at the intent of the legislature, if a statute is deemed to be ambiguous, the court looks to the objects to be accomplished and the evils and mischiefs sought

---

of his license and prior to the commencement of work thereon, furnish to the owner or other contracting party:

"1. A surety bond in the amount of the contract, conditioned upon completion of the contract according to its terms and payment of all subcontract labor, and material supplier charges.

"2. In lieu of the surety bond required by paragraph 1, the contractor may furnish a similarly conditioned bond with one (1) or more resident taxpayers who own equity in real property or who have liquid assets of the value of the contract, as sureties thereon.

"3. In lieu of furnishing either of the bonds described in paragraphs 1 and 2, the contractor may procure a waiver of bond executed in duplicate by the owner or other contracting party on a form prescribed and furnished by the registrar of contractors. One (1) copy of said waiver shall be filed with the registrar of contractors prior to the commencement of work under the contract.

If there be no owner or other contracting party at the time of commencement of the work or construction, as in the case of a speculative builder, the foregoing bond or waiver of bond, as the case may be, shall be procured or furnished before or in conjunction with the sale or contract for the sale of the property, and the bond shall run in favor of the purchaser or the waiver of bond shall be signed by him and then filed with the registrar of contractors.

"4. Said bonds or surety shall remain in full force and effect for six (6) months after date of completion."

2. "Other contracting party" is the person who enters into the agreement with the contractor for the construction of a building or other improvements. Such other contracting party might be, for example, a lessee or a trustee. In this opinion the word "owner" is used to also include those in the category of "other contracting party".

to be remedied. State v. Airesearch Mfg. Co., 68 Ariz. 342, 206 P.2d 562; City of Tucson v. Tucson Sunshine Climate Club, 64 Ariz. 1, 164 P.2d 598; Garrison v. Luke, 52 Ariz. 50, 78 P.2d 1120. Every practicing lawyer acquainted with the problems of the building industry is aware of the evils and mischiefs here sought to be remedied. By Section 62–201, A.C.A.1939, a lien is imposed in favor of persons who furnish labor or materials in the construction of any building or other structure. The lien is imposed upon the premises into which the labor and materials have been expended. Its purpose is to secure to subcontractors, laborers and materialmen the payment of the reasonable value of the services and materials furnished. Harbridge v. Six Points Lumber Co., 17 Ariz. 339, 152 P. 860. These persons are absolutely protected if they comply with the statute as to the time and manner of fixing the lien. However, the application of this lien law has often resulted in extreme hardship to owners of structures where the contractor after having been paid by the owner, either through dishonesty or insolvency, did not pay workmen and materialmen or subcontractors. Since the lien attached to the property, the ultimate burden fell and still falls upon the owner. Thus while workmen and materialmen were completely protected prior to the adoption of Section 67–2318a, the owner of the premises suffered through the default of his contractor. There is not now and has not been since the passage of the mechanics and materialmen lien law any occasion to further protect laborers and suppliers of materials. The mischief here sought to be remedied is the financial damage suffered by an owner whose property became liable for the payment of claims exerted by workmen and materialmen under the mechanics and materialmen lien law. Since a completion bond would be purposeless if the owner of a building had to assume the burden of the financial irresponsibility of contractors and subcontractors where they failed to pay their laborers and materialmen, an essential requisite necessarily followed that the bond be conditioned, as it is, upon "payment of all subcontract labor, and material supplier charges." The scope of this statute is therefore plainly exhausted when it is recognized that an owner must be afforded this protection if he is to be fully protected by a completion bond. It is when and only when liens have been asserted against the property, thereby increasing the contract price to the owner beyond the price fixed in his contract that the contractor and his surety become liable.

It is likewise a general principle of law that existing rights and obligations recognized by the common law will not be overturned or changed by doubtful implication but only on clear, unambiguous and explicit language. Weber v. Pinyan, 9 Cal.2d 226, 70 P.2d 183, 112 A.L.R. 407; Crowley v. Polleys Lumber Co., 92 Mont. 27, 9 P.2d 1068; Bose v. United Employment Agencies, 200 Misc. 176, 102 N.Y.S.2d 1012;

State v. Levine, 117 Vt. 320, 91 A.2d 678; Leach v. Leach, 261 Wis. 350, 52 N.W.2d 896; 82 C.J.S., Statutes, § 393, p. 940.

"* * * an intention to change the rule of the common law will not be presumed from doubtful statutory provisions. The presumption is that no such change is intended, unless the statute is explicit and clear in that direction. * * *" Jones v. City of Albany, 151 N.Y. 223, 228, 45 N.E. 557, 558.

"* * * Statutes creating rights or benefits not recognized by the common law must be strictly construed. Sutherland on Statutory Construction, 3d Ed., Section 6201. Where a change in the common law is to be effectuated the legislative intent to do so must be clearly and plainly expressed. Dean v. Metropolitan El. Ry. Co., 119 N.Y. 540, 547, 23 N.E. 1054, 1055; People v. Fanshawe, 137 N.Y. 68, 75, 32 N.E. 1102, 1104; Woollcott v. Shubert, 217 N.Y. 212, 220, 111 N.E. 829, 831, L.R.A. 1916E, 248; Jones v. City of Albany, 151 N.Y. 223, 228, 45 N.E. 557; People v. Wilson, 151 N.Y. 403, 409, 45 N.E. 862. * * * If the legislature intended such responsibility, the language of the statute would have clearly expressed such purpose. Highway Trailer Co. v. Janesville Electric Co., 187 Wis. 161, 204 N.W. 773, 780; Reeder v. Lehigh Valley Coal Co., 231 Pa. 563, 80 A. 1121, 1123." Bose v. United Employment Agencies, supra, 102 N.Y. S.2d 1014.

In the present case if this statute is to be construed as imposing a new liability on contractors and their sureties and a new right of action in favor of and for the benefit of the subcontractor's workmen and materialmen against the general contractor, then there has been a complete departure from the common law to the extent that the general contractor must be held to assume and be responsible for the financial condition, the business judgment, as well as the moral integrity of his subcontractors. Such a radical innovation creates a new obligation independent of contract and a cause of action for its enforcement, both against the contractor and the contractor's surety. This court should not infer, imply or assume such a novel departure from recognized principles and under such circumstances should not read into the statute an intention which is not clearly and plainly expressed.

Where legislative meaning is in doubt, the title of the act is to be considered in construing it. Apache Ry. Co. v. Shumway, 62 Ariz. 359, 158 P.2d 142, 159 A.L.R. 857; Garrison v. Luke, supra. By virtue of the constitution of this state, Article 4, Part 2, Section 13, providing that every act shall embrace but one subject and matters properly connected therewith "which subject shall be expressed in the title" this court has stated that "the scope of legislation in the body of the act is limited to the same extent as the title". In re Lewkowitz, on rehearing, 70 Ariz. 325, 330, 220 P.2d 229, 232. The title of this act provides:

178

"Relating to Contractors; Providing for a Completion Bond; Prescribing Penalties; Amending Sections 67–2303 and 67–2319; Arizona Code of 1939, and Amending Article 23, Chapter 67, Arizona Code of 1939, by Adding Section 67–2318a."

As can be seen, there is not the slightest suggestion that the common law rules of liability of contractors to subcontract workers and materialmen are to be changed nor is there any suggestion that the act provides additional rights and remedies in their favor.

In determining whether the matters expressed in the act are germane to the title the following quoted test was specifically approved in In re Lewkowitz, supra, 70 Ariz. at pages 331, 332, 220 P.2d at page 233:

"'* * * It has therefore been held that the title is sufficient if it is not productive of surprise and fraud, and is not calculated to mislead the legislature or the people, but is of such character as fairly to apprise legislators, and the public in general, of the subject matter of the legislation, and of the interests that are or may be affected thereby, *and to put anyone having an interest in the subject matter on inquiry.*' (Emphasis supplied.) 50 Am.Jur., Statutes, Sec. 167."

The condition in the completion bond to be furnished to the owner protects him against claims asserted under the mechanics and materialmen lien law and accordingly it is germane and not productive of surprise or fraud to require that the bond be conditioned on "payment of subcontract labor and material supplier charges". But, if it was the intention of the legislature to change the common law rule of privity of contract so as to compel a general contractor to be liable for his subcontractor's debts, then the act when compared with the title is clearly productive of surprise and fraud because it does not fairly apprise the legislature and the public in general of the interests that are to be affected.

The construction by assumption conferring and imposing rights, obligations and duties beyond the scope of the title has deprived the act of constitutionality. In so doing the majority have violated the cardinal rule of statutory construction that every intendment is in favor of the constitutionality of legislation. Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808; State Tax Commission v. Shattuck, 44 Ariz. 379, 38 P.2d 631. It is axiomatic that the duty of the court is to adopt a construction of a statute which will bring it into harmony with the constitution if its language will permit. See 11 Am.Jur. 725–728.

I am of the opinion that the construction of this act cannot be reconciled with the plain language found therein; and that the majority decision, in assuming an intention manifestly contrary to the general rules of construction is a palpable usurpation of the legislative prerogative. It takes from the

defendants, William S. Porter and Standard Accident Insurance Company, Inc., their property, applying it to the debts of another without the slightest authorization of law. The judgment should be reversed.